Roy Don BURNS *v.* STATE of Arkansas

CR 89-128                                                        780 S.W.2d 23

Supreme Court of Arkansas
Opinion delivered November 20, 1989

*William R. Simpson, Jr.*, Public Defender, by: *Thomas B.*

*Divine III*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. ■ Appellant appeals his convictions of rape, aggravated robbery, kidnapping, and theft. We accept jurisdiction under Ark. Sup. Ct. R. 29(1)(b) because appellant received a combined sentence of life plus seventy-five years. He raises two issues, arguing first that the trial court erred by denying his motion for continuance and second that the court erred by denying him an instruction for a lesser included offense. We summarily dispose of appellant's second point because he failed at trial to proffer an instruction, setting out the lesser included offense to which he now says he is entitled. *See Murphy v. State*, 248 Ark. 797, 454 S.W.2d 302 (1970); *Green v. State*, 7 Ark. App. 175, 646 S.W.2d 20 (1983). Upon considering appellant's remaining point on its merits, we hold the trial court was correct in denying appellant's continuance motion, and therefore affirm.

Appellant's request for a continuance arose immediately following the court's denial of his earlier motion for the court to appoint him new counsel. Appellant was indigent, and at arraignment on January 11, 1989, the court appointed the Public Defender's officer to represent the appellant. At that same hearing, appellant pled not guilty, and the court set a bond of $100,000. Appellant's appointed counsel filed a number of motions, and those matters were considered by the trial court at pre-trial hearings on March 20 and March 31, 1989. The trial was held on April 3.

At the Friday, March 31 hearing, the appellant asked the trial judge for a new attorney because appellant did not feel he was being properly represented. Appellant gave the following reasons for his motion: (1) He had asked his attorney for a copy of appellant's case file and it took his attorney one week to get it to the appellant; (2) the attorney had a negative attitude about appellant's case, and he tried to get the appellant to plea bargain; (3) his attorney would not request a new bond hearing unless appellant showed him $20,000 in cash; and (4) the appellant and counsel did not get along. After the court denied appellant another attorney, appellant moved for a continuance, so he would

have time to prepare his case. He explained that his access to the prison's law library had been limited to one thirty-minute period per week. The trial court denied the appellant a continuance and then asked the appellant if he intended to represent himself. Appellant answered that he would if he could not get another attorney.

■■ We have held that the right to counsel of one's choice is not absolute and may not be used to frustrate the inherent power of the court to command an orderly, efficient and effective administration of justice. *Leggins* v. *State*, 271 Ark. 616, 609 S.W.2d 76 (1980). Once competent counsel is obtained, the request for a change in counsel must be considered in the context of the public's interest in the prompt dispensation of justice. *Id.; Clay* v. *State*, 290 Ark. 54, 716 S.W.2d 751 (1986). A defendant's refusal without good cause to proceed with able appointed counsel constitutes a voluntary waiver of his sixth amendment right. *U.S.* v. *Gallop*, 838 F.2d 105 (4th Cir. 1988); *Carey* v. *State of Minn.*, 767 F.2d 440 (8th Cir. 1985); *Richardson* v. *Lucas*, 741 F.2d 753 (5th Cir. 1984).

Here, the record reveals appellant's appointed counsel was acting diligently and competently in appellant's behalf. Upon his appointment, counsel filed numerous motions and aggressively pursued those matters at the three pre-trial hearings. Counsel spent approximately eighty hours on appellant's case and was ready to proceed with the scheduled trial on April 3, 1989. The record further reveals counsel conducted extensive cross-examination at the suppression hearing on March 20, and appellant offered no criticism of counsel until the final hearing held three days before trial.

■ In considering the nature of the complaints the appellant voiced about his attorney, none of them bear adversely on the attorney's competence or his ability to represent appellant. The case file information appellant requested was forthcoming and the one-week delay in receiving it reflects no prejudice to the presentation of appellant's case at trial. Regarding the attorney's condition that appellant obtain $20,000 in cash before counsel would request another bond hearing, such a condition merely reflects the realities of the circumstances. Appellant was indigent, and the court had already set bond at $100,000 with no

indication that a lower one would be set most likely because of the seriousness of the charges against the appellant. Finally, neither the appellant's general complaint that he and his attorney did not get along nor counsel's recommendation that appellant accept the state's negotiated plea offer are good causes to discharge appointed counsel.[1] In *Morris* v. *Slappy*, 461 U.S. 1 (1982), the Court made it clear that the sixth amendment does not guarantee that an appointed attorney establish an exemplary rapport with the accused, nor does it guarantee an accused a "meaningful attorney-client relationship." Here, counsel gave appellant frank advice when considering the state's charges against him and the overwhelming evidence as to the appellant's guilt. In fact, counsel's recommendation was shown to be realistic and practical in view of the sentence finally imposed in this matter. If appellant had accepted the state's earlier offer, appellant's punishment would have been less.

We note at this point that appellant seems to rely on the court of appeals' earlier decision in *Parker* v. *State*, 18 Ark. App. 252, 715 S.W.2d 210 (1986). He argues that the reasons he argues here for discharging counsel are the same as those raised by the defendant in *Parker*; because the appellate court found such reasons sufficient in *Parker*, appellant argues we should do likewise. While we acknowledge some similarity between the arguments made in this case and *Parker*, we overrule *Parker* to the extent that our decision and rationale conflicts with *Parker*.

In conclusion, we would add that, in making his decision to represent himself, the trial court made appellant well aware of the dangers and disadvantages of self-representation. *See Faretta* v. *California*, 422 U.S. 806 (1975); *see also Berry* v. *Lockhart*, 873 F.2d 1168 (8th Cir. 1989). The trial court continually encouraged appellant to use his appointed counsel, pointing out that the attorney was trained to go to court, while appellant was not. The court warned appellant that he would have to follow the court's rules and procedures and could not make speeches. In the preliminary proceedings, appellant was made aware of the nature

---

[1] *See* 2 W. LaFave & J. Israel, *Criminal Procedure* § 11.4(b) (1984) for an excellent discussion regarding replacement of appointed counsel and what has and has not been recognized as good cause for discharging current counsel and appointing new counsel.

and seriousness of the charges against him and the penalties that could be imposed. Appellant had previously been convicted of larceny and sodomy charges in Oklahoma, so he was no newcomer to the judicial system. In sum, the record reflects that the appellant knowingly and intelligently decided to proceed pro se, but even so, the court required appointed counsel to stand by and to assist when the circumstances dictated counsel's services.[2]

For the reasons given above, we affirm.

---

[2] Appointed counsel aided appellant in selecting the jury, arguing to the jury, performing some of the examination at trial, and in interposing objections, including making a directed verdict motion.