Robert Earl CHERRY *v.* STATE of Arkansas

CA CR 02-226                              95 S.W.3d 5

Court of Appeals of Arkansas
Division IV
Opinion delivered January 8, 2003

*Kearney Law Offices*, by: *John L. Kearney*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Katherine Adams*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. A Drew County jury convicted appellant, Robert Earl Cherry, of manufacturing methamphetamine, simultaneous possession of drugs and firearms, possession of drug paraphernalia with intent to manufacture methamphetamine, possession of anhydrous ammonia in an unlawful container, and possession of ephedrine and pseudoephedrine with intent to manufacture. He was sentenced to a total of forty years' imprisonment in the Arkansas Department of Correction. None of Mr. Cherry's arguments have merit, and we accordingly affirm.

*Facts*

On July 6, 2000, investigators for the Arkansas State Police, the Tenth Judicial District Drug Task Force and the Drew County Sheriff's Department executed a search warrant at Mr. Cherry's residence, including several outbuildings on his property. They found the following items during the search: an improperly labeled small compressed-gas cylinder with a flaky blue residue around the valve fitting which indicated it had contained anhydrous ammonia; glass jars with methanol, guaifenesin, ephedrine,

pseudoephedrine, and methamphetamine residues; scales, soft-drink bottle caps with tubing running through them; thirteen cans of engine starting fluid; denatured alcohol; a loaded Ruger 9 mm handgun; $3,060 found behind a piece of paneling; a radio scanner with a list of law enforcement frequencies; a radio frequency detector that would emit a sound that would indicate to the user that a person in the area was wearing a wire; thirty-seven pages of recipes for manufacturing methamphetamine; coffee filters with residue; and multiple packages of pseudoephedrine pills.

After the execution of the warrant, Mr. Cherry was taken into custody. Arkansas State Police Criminal Investigator Rick McKelvey and Special Agent in charge of the Tenth Judicial District's Drug Task Force, Brent Reaves, conducted a custodial interrogation of Mr. Cherry. Both officers testified that the appellant read, understood, and signed a *Miranda*-rights waiver form indicating that he was aware of his rights, wished to waive those rights, and would voluntarily make a statement. At the time, Mr. Cherry was a forty-two-year-old, self-employed mechanic and a high school graduate. He never asked for an attorney. In his statement, Mr. Cherry admitted to using and selling methamphetamine and identified his most recent use of methamphetamine as the night before, admitted getting the anhydrous ammonia from a farmer's tank, and buying the chemicals from Wal-Mart. Iinvestigator McKelvey testified that, although Mr. Cherry said he had ingested methamphetamine the night before, he did not appear to be intoxicated at the time of the interview.

## Sufficiency of the Evidence

A motion for directed verdict is a challenge to the sufficiency of the evidence. We address this issue first because the Double Jeopardy Clause precludes a second trial when a judgment of conviction is reversed for insufficient evidence. *E.g. Coon v. State*, 76 Ark. App. 250, 253, 65 S.W.3d 889, 890 (2001). The test for determining sufficiency of the evidence is whether sub-stantial evidence supports the verdict. *Hatley v. State*, 68 Ark. App. 209, 213, 5 S.W.3d 86, 88 (1999). Evidence is substantial when it is forceful enough to compel a conclusion and goes beyond mere speculation or conjecture. *Wortham v. State*, 65 Ark.

App. 81, 82, 985 S.W.2d 329, 329 (1999). Circumstantial evidence can be sufficient to sustain a conviction when it excludes every other reasonable hypothesis consistent with innocence. *Mace v. State*, 328 Ark. 536, 539, 944 S.W.3d 830, 832 (1997). The question of whether the circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide. *Ross v. State*, 346 Ark. 225, 230, 57 S.W.3d 152, 156 (2001).

■ Here, Mr. Cherry argues that there was insufficient evidence of manufacturing methamphetamine because there was no evidence of lithium and that lithium was necessary to the manufacturing process. This argument is without merit. The State's expert in forensic chemistry testified that Mr. Cherry was using the lithium/sodium method of manufacturing methamphetamine. However, he also testified that during the manufacturing process, when using this method, lithium acts as a catalyst and is consumed during the process. He concluded that there would be no lithium left to be found or tested. This testimony sufficiently explained the absence of lithium upon which Mr. Cherry based his argument.

■ Mr. Cherry also argues that there was insufficient evidence of simultaneous possession of drugs and firearms because he was arrested outside his residence and there were only trace amounts of methamphetamine. This argument is similarly without merit. A person commits the offense of simultaneous possession of drugs and firearms if he commits a felony violation of Ark. Code Ann. § 5-64-401, or attempts, solicits, or conspires to commit a felony violation of § 5-64-401 while in possession of a firearm. *See* Ark. Code Ann. § 5-74-106(a)(1) (Repl. 1997). It is a felony violation of Arkansas Code Annotated § 5-64-401 to possess, manufacture, or attempt to manufacture methamphetamine. Ark. Code Ann. § 5-64-401(a)(1)(i) (Repl. 1997). The statute does not require that methamphetamine actually be produced from the manufacturing process to sustain a conviction because a felony violation of the statute includes attempted manufacture of methamphetamine. *Harris v. State*, 73 Ark. App. 185, 187, 44 S.W.2d 347, 349 (2001).

■ In this case, a loaded weapon was found in Mr. Cherry's kitchen near items used to manufacture methamphetamine. To sustain a conviction, the State must show that the accused possessed a firearm and a nexus between the firearm and the drugs. *Manning v. State*, 330 Ark. 699, 703, 956 S.W.2d 184, 187 (1997). "For use" as a firearm includes the term "readily accessible for use." *Rabb v. State*, 72 Ark. App. 396, 403, 39 S.W.3d 11, 16-17 (2001). The accused does not actually have to be present where the drugs and firearms were found because his possession may be constructive. *Darrough v. State*, 330 Ark. 808, 811, 957 S.W.2d 707, 708 (1997). The State did not have to show that Mr. Cherry physically possessed the handgun in order to sustain a conviction for its possession if the gun's location was such that it was under Mr. Cherry's dominion and control. *See id.* The gun in Mr. Cherry's kitchen next to items used to manufacture methamphetamine sufficiently meets that burden.

■ Mr. Cherry also questions the sufficiency of the evidence regarding his possession of anhydrous ammonia in an unlawful container. His argument emphasizes that prosecution witnesses testified that it was possible that chemicals and/or gases other than anhydrous ammonia could have produced the bluish tarnish found around the brass fittings of the gas cylinder found at Mr. Cherry's residence, but the State's expert witness also testified that the discoloration of the fittings was consistent with it having contained anhydrous ammonia. Although the substance in the tank was not analyzed to prove it was anhydrous ammonia, Mr. Cherry confessed to taking anhydrous ammonia from a farmer's tank. In the absence of any other reasonable explanation, the jury could conclude that there was sufficient evidence that the substance in the container was anhydrous ammonia.

■ Mr. Cherry also argues that not all of the elements necessary for production were present and that all the items that were present had ordinary and legal usages. Therefore, he contends, there was insufficient evidence of possession of drug paraphernalia with intent to manufacture. This argument also fails. A person commits the offense of possession of drug paraphernalia with intent to manufacture methamphetamine if he uses, or possesses with intent to use, drug paraphernalia to manufacture metham-

phetamine. Ark. Code Ann. § 5-64-403(c)(5) (Supp. 2001). The term "drug paraphernalia" specifically includes items such as scales and balances, cutting agents, bowls, containers, and mixing devices. See Ark. Code Ann. § 5-64-101(v)(5), (6) & (8) (1997 Repl.). These items have ordinary and legal usages, and the fact-finder must determine whether the object is drug paraphernalia considering all logically relevant factors and evidence such as the following: (1) statements by an owner or by anyone in control of the object concerning its use; (2) prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance; (3) the proximity of the object, in time and space, to a direct violation of the con-trolled substances act; (4) the proximity of the object to controlled substances; (5) the existence of any residue of controlled sub-stances on the object; (6) direct or circumstantial evidence of the intent of the owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to manufacture a controlled substance; (7) instructions, oral or written, provided with the object concerning its use; (8) expert testimony concerning its use. Ark. Code Ann. § 5-64-101(v)(1) *et. seq.* (Repl 1997).

In this case, the State introduced two, two-quart con-tainers containing a clear liquid with an ether odor; two contain-ers containing an organic solvent and white sediment; a quart glass pill-soaking container containing sediment consisting of metha-nol, guaifensin, ephedrine; a glass jar containing a tan substance that tested positive for methamphetamine; a one-gallon glass jar containing a methamphetamine solution; thirteen cans of starting fluid that contained ether and three containers of denatured alco-hol, which are used to extract the methamphetamine; coffee fil-ters, Liquid Fire, salt, funnel, plastic lids with holes punched through them, and plastic tubing used to make the HCL generator and to separate the liquid from the solid. Sufficient evidence was presented to the jury from which they could conclude that Mr. Cherry possessed these items for the purpose of manufacturing methamphetamine.

Relying upon the same premise that not all of the ele-ments necessary for production of methamphetamine were pre-

sent, Mr. Cherry argues that there was insufficient evidence to sustain his conviction for possession of ephedrine with intent to manufacture. Ark. Code Ann. § 5-64-1102(a)(1) (Supp. 2001) provides that it is unlawful for a person to possess ephedrine, pseudoephedrine, or phenylpropanolamine or their salts, optical isomers, or salts of optical isomers with intent to manufacture methamphetamine. Possession of more than five grams of these prohibited substances is *prima facie* evidence of the intent to manufacture methamphetamine. Ark. Code Ann. § 5-64-1101(b) (Repl. 1997). The total amount of pseudoephedrine found at Mr. Cherry's residence was 7.5 grams. Clearly, when considered with the other evidence, there was sufficient evidence from which the jury could conclude that Mr. Cherry possessed ephedrine with intent to manufacture.

### Suppression of Custodial Statement

██ ██ In addition to his arguments regarding the sufficiency of the evidence, Mr. Cherry asserts that the trial court erred in denying his motion to suppress his custodial statement. In reviewing a trial judge's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances and reverse only if the ruling is clearly against the preponderance of the evidence. *E.g., Wright v. State*, 335 Ark. 395, 403-04, 938 S.W.2d 397, 401 (1998). The credibility of witnesses who testify at a suppression hearing about the circumstances surrounding the custodial statement is for the judge to determine, and we defer to the superior position of the trial judge in matters of credibility. *Id.*

██ ██ We find no error in the trial court's denial of the motion to suppress. Arkansas State Police Criminal Investigator Rick McKelvey and Special Agent Brent Reaves participated in the custodial interrogation of Mr. Cherry after the execution of the search warrant at his residence. They testified that Mr. Cherry read, understood, and signed a *Miranda*-rights waiver form and that he never asked for an attorney. Furthermore, it appeared to them that he understood each provision of the rights form he signed and he did not appear to be mentally impaired by the drugs he stated he had ingested the night before. Although Mr. Cherry

asserts that his confession was obtained under circumstances indicative of coercion, he cites no facts or legal argument to support that assertion, and we need not consider it. *See Johnson v. State*, 71 Ark. App. 58, 79, 25 S.W.3d 445, 458 (2000).

Accordingly, we find no merit to Mr. Cherry's arguments and affirm.

STROUD, C.J., and NEAL, J., agree.