104 Ark.App. 198

**Amanda Gail HOLT, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CACR 08–170.**

Court of Appeals of Arkansas.

Dec. 31, 2008.

William R. Simpson, Jr., Public Defender, Kent C. Krause, Deputy Public Defender, by Clint Miller, Deputy Public Defender, and Misty Steele, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar, for appellant.

Dustin McDaniel, Att'y Gen., by Karen Virginia Wallace, Ass't Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Chief Judge.

We affirm appellant's convictions for possession of drug paraphernalia with intent to manufacture and for three counts of exposing a child to a chemical substance or methamphetamine.

It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to manufacture methamphetamine. Ark.Code Ann. § 5–64–403(c)(5)(A) (Supp.2007). It is likewise unlawful for any adult, with the intent to manufacture methamphetamine, to knowingly cause or permit a child under eighteen years of age to be exposed to, ingest, inhale, or have any contact with a chemical substance or methamphetamine. Ark. Code Ann. § 5–27–230(b)(1) (Repl.2006). For purposes of this statute, "chemical substance" means a substance intended to be used as a precursor in the manufacture of methamphetamine, or any other chemical intended to be used in the manufacture of methamphetamine. Ark.Code Ann. § 5–27–230(a)(1)(A) (Repl.2006).

Appellant argues that the evidence is insufficient to support these convictions. Our standard of review for a sufficiency challenge is as follows:

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. We affirm a conviction if substantial evidence exists to support it. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture.

Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. Whether the evidence excludes every other hypothesis is left to the jury to decide. The credibility of witnesses is an issue for the jury and not the court. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence.

*Cluck v. State,* 365 Ark. 166, 170–71, 226 S.W.3d 780, 783–84 (2006) (internal citations omitted).

Appellant expressly concedes on appeal that there is substantial evidence that methamphetamine was manufactured in the residence at 4108 Vinson Road, a small mobile home, on September 21, 2006; that she was present in the residence when the methamphetamine was being manufactured; and that she knew that methamphetamine was being manufactured. There was, in addition, substantial evidence that appellant had been staying at the residence for a few weeks. On September 21, 2006, a police officer responded to a report that three small children were playing in the road in front of the residence. He observed appellant's three children—ages four, three, and not yet two—playing outside when he arrived. They were only semi-dressed and smelled of methamphetamine. When the officer approached the residence, he detected the strong chemical odor associated with methamphetamine manufacture emanating from within and permeating the air around the residence. The officer knocked on the door, which was answered by Michael Hogue. Hogue came out on the front porch and closed the door. The officer asked to speak to appellant, and Hogue went back inside the residence to get her. The officer heard movement coming from the bedroom to the right (the only room in the residence with a bed), and appellant came to the door. Asked if she knew where her children were, appellant said that she did not know they were up yet because she had been asleep.

The officer, concerned about the chemical odor, obtained Hogue's permission to search the residence. The residence was filthy and contained only one bed. The bed was located in the bedroom to the right, where officers discovered a function-ing methamphetamine lab with a reaction in process. Items found in the bedroom included a razor blade and plastic bag on the dresser, hypodermic needles, tubing, coffee filters, a glass smoking pipe, a salt container stained with iodine as commonly found in methamphetamine labs, a large cardboard box containing boxes of matches, a pair of scissors, a gas torch, a hot plate that was warm to the touch, and a black satchel containing hydrochloric acid generator together with bottles of liquid in which the pill-soak portion of the manufacturing process was then taking place. Many of these items were in plain view. The satchel was found under the headboard of the bed after the mattresses were removed. Articles of children's clothing were found in a dresser drawer that also contained drug paraphernalia. Appellant's children were the only children residing in the residence. The children were decontaminated at a hospital, where they were diagnosed as neglected because of exposure to drug use and manufacturing. Hair follicle tests showed that all three of the children tested positive for exposure to methamphetamine and that the youngest child appeared to have actually ingested cocaine as well.

Appellant argues that, because she was not the sole occupant or owner of the residence, the evidence is insufficient to show that she possessed the drug paraphernalia. We do not agree.

In order to prove possession, it is not necessary to prove literal physical possession of contraband. *See Dodson v. State,* 341 Ark. 41, 14 S.W.3d 489 (2000). Contraband is deemed to be constructively possessed if the location of the contraband was under the dominion and control of the accused. *See Fultz v. State,* 333 Ark. 586, 972 S.W.2d 222 (1998). Although constructive possession may be implied when contraband is

in the joint control of the accused and another person, joint occupancy, standing alone, is not sufficient to establish possession or joint possession. *Abshure v. State,* 79 Ark.App. 317, 87 S.W.3d 822 (2002). The State is also required to establish that (1) the accused exercised care, control, and management over the contraband, and (2) the accused knew the matter possessed was contraband. *Id.*

*Loy v. State,* 88 Ark.App. 91, 101, 195 S.W.3d 370, 374–75 (2004). Here, appellant admits that she knew that the manufacture of methamphetamine was being carried out at the residence. We also think it significant that appellant stated that she had been sleeping immediately before police appeared. However, the only place suitable for sleeping in the trailer was a bedroom where methamphetamine was being manufactured, and the bed was covered with and surrounded by substances and paraphernalia used in the manufacture of methamphetamine. A jury is not required to abandon common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from such improbable explanations of incriminating conduct. *See Walley v. State,* 353 Ark. 586, 112 S.W.3d 349 (2003). Given that many of the items were in plain view or found with her children's clothing, and that methamphetamine was actually being manufactured at the time of her arrest, we hold that the evidence is sufficient to show that she knew that the items were drug paraphernalia and that she exercised care, control, and management over them. On this basis, we affirm appellant's conviction of possession of drug paraphernalia with intent to manufacture.

■ We also hold that the evidence supports appellant's convictions of knowingly permitting a child to be exposed to methamphetamine. Appellant's admission that she knew methamphetamine was being manufactured, together with the evidence already recited, is sufficient to prove the element of knowing exposure to methamphetamine. However, pursuant to Ark. Code Ann. § 5–27–230(b)(1) (Repl.2006), the State must also prove that appellant did so with the intent to manufacture methamphetamine. We hold that the evidence is sufficient to support the finding that appellant intended to manufacture methamphetamine. We have held, *supra,* that substantial evidence supports appellant's conviction of possession of drug paraphernalia with intent to manufacture. Furthermore, laboratory analysis of the paraphernalia verified the presence of both pseudoephedrine (a methamphetamine precursor) and actual methamphetamine in glass vials found in the residence that were used in the manufacturing process. Pursuant to Ark.Code Ann. § 5–64–401(g)(1) (Supp.2007), the presence of these substances on the paraphernalia gives rise to a presumption that the possessor (in this case, appellant) has engaged in conduct constituting a substantial step in the manufacture of methamphetamine. We cannot say that the fact-finder was, on this record, required to find that appellant had rebutted the presumption by submission of evidence sufficient to create a reasonable doubt that she attempted to manufacture methamphetamine. *See* Ark.Code Ann. § 5–64–401(g)(2) (Supp. 2007).

Affirmed in part.

GLADWIN, ROBBINS, VAUGHT, and HEFFLEY, JJ., agree.

GLADWIN, J., concurs.

HART, MARSHALL, BAKER, and HUNT, JJ., dissent.

ROBERT J. GLADWIN, Judge, concurring.

Although I believe that appellant's conviction for manufacturing a controlled sub-

stance is not supported by substantial evidence, I believe the other counts on which the appellant was convicted can be affirmed.

Appellant was charged with possession of drug paraphernalia with the intent to manufacture. It is unlawful for a person to use, or possess with the intent to use, drug paraphernalia to manufacture methamphetamine. Ark.Code Ann. § 5–64–403(b)(5)(A) (Supp.2007). Under our law, it is clear that the State need not prove that the accused physically possessed the contraband in order to sustain a conviction for possession if the location of the contraband was such that it could be said to be under the dominion and control of the accused, that is constructively possessed. *Heard v. State*, 316 Ark. 731, 876 S.W.2d 231 (1994). Constructive possession can be implied when the contraband is in the joint control of the accused and another. *Bradley v. State*, 347 Ark. 518, 65 S.W.3d 874 (2002). Joint occupancy, however, is not sufficient in itself to establish possession or joint possession. *Id.* There must be some additional factor linking the accused to the contraband, and the State must show additional facts and circumstances indicating the accused had knowledge and control of the contraband. *See Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003).

In *Walley*, the appellant was convicted of possession of drug paraphernalia with intent to manufacture. The jury was presented with evidence of an operational methamphetamine lab in the kitchen of Walley's residence. During a search of the residence, law enforcement agents found numerous items used in the manufacturing of methamphetamine. Walley argued that there was no additional evidence linking him to the contraband. Our supreme court held that the jury could reasonably conclude that Walley knew of the existence of the drugs and drug manufacturing paraphernalia in the kitchen of the residence. The jury did not have to believe Walley's testimony that he did not notice the smell in the house, did not notice the stains in the kitchen, did not notice the black plastic on the windows, and did not know what was in the locked cabinets. *Walley v. State, supra.*

In *Fitting v. State*, 94 Ark.App. 283, 229 S.W.3d 568 (2006), the appellant was also convicted of possession of drug paraphernalia with intent to manufacture. The testimony showed that Fitting stayed periodically at the residence of Eddie McCann. McCann testified that Fitting and a woman were "cleaning up a cook" when the police arrived. A police officer testified that Fitting and a woman were walking toward the living room from the back area of the house, although he could not say specifically from which room they came. In the house, police found a number of components for a methamphetamine lab. Fitting argued that the State provided no evidence that he was in actual or constructive possession of drug paraphernalia with the intent to manufacture. This court held that the evidence tended to connect Fitting with the offense charged. We stated that, among other factors, the police officer testified that Fitting and the woman were walking to the living room from the back area of the house, thus Fitting was in close proximity to the manufacturing items that were seized.

In our case, Officer Howard testified that the only sound he heard was movement coming from the bedroom where the methamphetamine lab was located. Further, appellant said she had been sleeping, and the only bed in the house was in the bedroom. There was a strong chemical odor coming from the residence. Ms. Holt had lived there for at least two weeks.

Additionally, the dresser in the bedroom contained children's clothes and a syringe.

Jurors need not view each fact in isolation but rather may consider the evidence as a whole. *Kelley v. State*, 103 Ark.App. 110, 286 S.W.3d 746 (2008). The jury is entitled to draw any reasonable inference from the circumstantial evidence to the same extent it can from direct evidence. *Id.* Jurors are instructed that they are allowed to draw upon common sense to infer intent from the circumstances. *See DeShazer v. State*, 94 Ark.App. 363, 230 S.W.3d 285 (2006). I believe that this evidence connects the appellant with constructive possession of the working methamphetamine lab.

Appellant next argues that there is insufficient evidence that she kept or maintained a drug premises. She argues that her mere presence alone is insufficient to support the verdict. It is unlawful for a person knowingly to keep or maintain any store, shop, warehouse, dwelling, building or other structure or place or premise that is resorted to by a person for the purpose of using or obtaining a controlled substance, including methamphetamine. Ark. Code Ann. § 5–64–402(a)(2) (Repl.2005). There is no doubt that appellant resided in a dwelling that was resorted to by persons to obtain methamphetamine. The only question was did appellant "keep or maintain" this dwelling. The terms "keep or maintain" are not defined in the statute, and our supreme court has not interpreted this statute. It is clear that something less than actual ownership is sufficient for a person to keep or maintain a drug premises. *See Bridges v. State*, 46 Ark.App. 198, 878 S.W.2d 781 (1994); *Sweat v. State*, 25 Ark.App. 60, 752 S.W.2d 49 (1988). Webster's II dictionary defines "keep" as "to remain in a given state: stay." "Maintain" is defined as "to keep an existing state." It is clear that appellant lived in

the dwelling and kept it in its existing state. This is sufficient to find that appellant kept or maintained a drug premises.

Finally, appellant argues that the State failed to introduce substantial evidence that she, with the intent to manufacture methamphetamine, permitted her children to be exposed to a chemical substance or methamphetamine. Any adult who with the intent to manufacture methamphetamine, knowingly causes or permits a child to be exposed to, ingest, inhale or have any contact with a chemical substance or methamphetamine is guilty of a Class C felony. Ark.Code Ann. § 5–27–230(b)(1) (Repl. 2006). Appellant argues that there is no evidence that she had any intent to manufacture methamphetamine. The statute provides that intent may be demonstrated by the substance's use, quantity, manner of storage, or proximity to another precursor or equipment used to manufacture methamphetamine. In this case an entire working methamphetamine lab was found in the bedroom where children's clothes were found. The various chemicals were found in close proximity to the lab, and other bags of chemicals were found in the other end of the residence. Again, the close proximity of the various pill soak and bilayer liquids to the rest of the lab show a close proximity. Under the statute, there is enough to show an intent to manufacture.

It should be noted that I do not read Arkansas Code Annotated section 5–27–230(b)(1) to be an enhancement statute. I believe that this is a separate, stand-alone violation against the family with an enhancement clause if the child suffers physical injury.

EUGENE HUNT, Judge, dissenting.

The majority's evaluation of this case leads it to affirm the conviction of appellant for possession of drug paraphernalia

with intent to manufacture methamphetamine and exposing a child to methamphetamine. I disagree. I would reverse and dismiss due to lack of evidence.

According to Arkansas Code Annotated section 5–64–403(c)(5)(A) (Supp.2007), it is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to manufacture methamphetamine. Appellant argues that there was insufficient evidence linking her to drug paraphernalia. In this case, the contraband was located in a trailer that appellant and another adult occupied. Beyond appellant's presence, there had to be some other factor linking appellant to the contraband. *Sweat v. State,* 25 Ark.App. 60, 752 S.W.2d 49 (1988). The State's case was devoid of this linking factor. There was no proof of possession or constructive possession. Possess means to exercise actual dominion, control or management over a tangible object. Ark.Code Ann. § 5–1–102(15) (Supp.2007). One may possess an object without touching the object. *Glover v. State,* 273 Ark. 376, 619 S.W.2d 629 (1981). Dominion includes the right to possess. *Id.* The principles governing possession of contraband are well established. *Bridges v. State,* 46 Ark.App. 198, 878 S.W.2d 781 (1994). There was no proof of actual or constructive possession of drug paraphernalia. No witness testified that they saw appellant handle any item used in making methamphetamine. The State offered no fingerprints that connected appellant to any of the drug paraphernalia.

Appellant was also found guilty of three counts of exposing a child to a chemical substance or methamphetamine. Arkansas Code Annotated section 5–27–230(b)(1) (Repl.2006), state: "Any adult who, with the intent to manufacture methamphetamine, knowingly causes or permits a child to be exposed to, ingest, or have any contact with a chemical substance or metham-

phetamine is guilty of a Class C felony." Intent can be demonstrated by the substance's use; quantity, manner of storage; or proximity to another precursor or equipment used to manufacture methamphetamine. *Id.* § 5–27–230(a)(1)(B). Appellant concedes that evidence was presented that she knowingly exposed her three children to the manufacture of methamphetamine. However, appellant argues that the State failed to prove the requisite intent. The statute at issue require some involvement by appellant. As indicated above, there is nothing linking appellant to the methamphetamine lab discovered at the trailer other than her presence. There was no evidence that appellant took part in the manufacture of the drug.

The majority has affirmed appellant's conviction of exposure of a child to a chemical substance. Intent is required to sustain such a conviction. There is no evidence that the majority can point to that shows intent. The statute requires that, with the intent to manufacture, one knowingly causes or permits a child to be exposed to a chemical substance. The fact that the children's hair tested positive for methamphetamine does not prove intent. While it is true that appellant and Hogue jointly occupied the trailer, such fact alone will not suffice to sustain a conviction.

The problem of joint occupancy arises because of the rule that when joint occupancy is the only evidence the State has, there must be some additional link between the accused and the contraband. On the other hand, if the State is proving a case through constructive possession of contraband by the occupant of a dwelling, it is not required in the first instance to disprove joint occupancy. If, however, evidence is presented that indicates joint occupancy and occupancy is the only evidence the State offers to prove possession, it must either provide the necessary link

or proof. *Osborne v. State*, 278 Ark. 45, 643 S.W.2d 251 (1982). The State has failed to show any connection to the exposure of the children to methamphetamine beyond appellant's presence.

There are no facts other than joint occupancy to connect appellant to Hogue's crimes. More is required. Therefore, I respectfully dissent.

HART, MARSHALL, and BAKER, JJ., join in this dissent.

EUGENE HUNT, Judge.

This appeal by Amanda Gail Holt (Appellant), is from finding of guilt by a jury of manufacturing methamphetamine, possession of drug paraphernalia with intent to manufacture methamphetamine, maintaining a drug premises, and exposing a child to a chemical substance. Appellant received 120 months for manufacturing methamphetamine; 60 months for possession of drug paraphernalia with intent to manufacture methamphetamine; 72 months for maintaining a drug premises; and 120 months each on three counts of exposing a child to a chemical substance or methamphetamine. Appellant contends that the evidence was insufficient to convict. We agree that the evidence was insufficient to support appellant's convictions for the charges of manufacturing methamphetamine and maintaining a drug premises. Appellant's convictions for those charges are reversed and dismissed.[1]

On September 21, 2006, officers of the Pulaski County Sheriff's Office received a call about three small children playing in the road unattended at 4108 Vinson Road. Deputy Randy Howard was dispatched to answer the call. Upon Howard's arrival, the children, ages one, three, and four, were found behind one of the trailers at that location. The youngest child had "no clothes on." The front door of the trailer was open and Howard was able to make contact with appellant and the trailer's owner, Michael Hogue. Howard notice a distinct chemical odor of what he believed was methamphetamine coming from inside the trailer. Officers from the narcotics division were called to investigate. The officers took a reading and confirmed the presence of phosphine gas. Hogue's parole officer was notified and once the parole officer arrived at the trailer, a search ensued. Several items connected to the manufacture of methamphetamine were recovered from the master bedroom that Hogue occupied. Appellant and Hogue were arrested.

Appellant stood trial on November 11, 2007. Randy Howard of the Pulaski county Sheriff's Office testified that he answered a call at 4108 Vinson Road on September 21, 2006, and that he located three small children playing outside the trailer at that address unattended. He then went to the front door, which was open, and knocked on the side of the trailer. Hogue came from the master bedroom and answered the door. According to Howard, he could smell the strong chemical odor of methamphetamine before he stepped on the porch. Howard asked to speak with the children's mother and Hogue went to get her. Howard stated that he was not sure where appellant came from within the trailer. Appellant told Howard that she did not know that her children were up yet and that she had been asleep. Howard told appellant and Hogue that he was concerned about the children being in the trailer with the strong chemical odor present. Howard

---

1. This opinion will only address the two charges against appellant that are being re- versed and dismissed on appeal.

testified that he asked the children to come out of the trailer and he then contacted his sergeant. Howard further testified that he then received permission from Hogue to search the outside of the trailer. The same chemical odor that he smelled initially was present around the back of the trailer where the underpinning was missing. Howard stated that due to the strong chemical odor, he could not stand to be inside the trailer long. Howard testified that there was another bedroom at the other end of the trailer but there was no place for anyone to sleep. Howard was shown a photograph of the trailer and he acknowledged that a mattress was seen leaning against the living room wall. Howard stated on cross-examination that he asked appellant for permission to search and was told that she had only lived there for a couple of weeks and that "it was not her place to give [him] consent."

Kathleen Brewer, of the narcotics division, came to the trailer and took a reading to confirm the presence of a methamphetamine laboratory. Brewer noticed the distinct smell of methamphetamine upon arrival. Brewer conducted a reading near the back door of the trailer, which indicated the presence of phosphine gas. Brewer stated that this reading was significant because phosphine gas is present whenever red phosphorus is used to manufacture methamphetamine. Brewer further stated that phosphine gas is extremely dangerous in very large quantities and that it attaches itself to anything that is wet or has water in it. According to Brewer, the gas destroys the wet tissue of the mucus membranes found in the mouth, nose, lungs, and trachea. Brewer stated that she was present for the search of the trailer and that all evidence of a methamphetamine laboratory was found in the master bedroom. According to Brewer, Hogue claimed the bedroom from which the items were seized.

Chris Holmes, of the narcotics division, was with the parole officer when the trailer was searched. Holmes stated that a bedroom was located to the right of the front door, there was a washroom to the left of the front door, and the kitchen was to the left of the washroom. The living room was located on the other side of the kitchen and another bedroom was located adjacent to the living room. Holmes smelled a strong chemical odor when he first arrived at the trailer. The master bedroom was searched first. A stained salt container, a gas torch, a razor blade, and a small plastic bag were located on the dresser in the master bedroom. Holmes stated that the items caught his eye because salt containers are usually stained from iodine in methamphetamine laboratories, razor blades are usually used to chop the narcotics, and small plastic bags are used to package narcotics. Hypodermic needles, a glass smoking device, coffee filters, and a spoon were also found in a dresser drawer in the master bedroom. Children's clothing was in one of the drawers, which also contained a hypodermic needle. According to Holmes, coffee filters are used in a methamphetamine lab and the other items found were consistent with drug use. A hot plate, which was still warm, was located on the side of the dresser. The hot plate caught Holmes's attention because hot plates are used as heating elements during the cooking stages. A large box containing match boxes and a pair of scissors were found in the closet of the master bedroom. A piece of tubing was also found lying on the closet floor. Homes testified that tubes are used to transfer gases and other chemicals during the various stages of manufacturing methamphetamine. A camp fuel can and a glass jar were found wrapped in a blanket on the bed. Holmes stated that camp fuel is used for a number of things in a meth-

amphetamine lab and that glass jars are used to store chemicals and chemical components. A black leather-like satchel was found beneath the edge of the headboard. According to Holmes, the satchel contained several items, including a liquor bottle containing a bi-layer liquid; two plastic bottles, consistent with an HCL generator, which contained a white granular substance; a hydrogen peroxide bottle; a bottle containing a blue cloudy liquid, which was consistent with a pill soak; two bottles containing a blue cloudy substance; a red plastic bottle; a bottle of drain opener; and bottle caps with tubing and electrical tape. Holmes stated that the items in the satchel were consistent with a methamphetamine lab. Holmes testified that windows had to be opened so that the trailer could air out. The items were subsequently taken to the sheriff's office where they were sampled. Holmes stated that fingerprints were not taken from the items because there were persons found inside the trailer and the "meth lab" was not abandoned. Holmes also stated that he did not witness the manufacturing of methamphetamine.

Norman Kempler of the Arkansas Crime Lab was assigned to test the items found in Hogues' trailer. Kempler stated that the top layer of the bi-layer liquid contained methamphetamine and that the bottom layer was a very strong base. According to Kempler, "the only process after that bi-layer liquid [is formed] is to make meth[amphetamine] into the form that you can actually use it." The cloudy blue liquid contained pseudoephedrine. Kempler stated that the sample was representative of a pill soak. The methanol rinse of the tape contained methamphetamine. The methanol rinse of the syringes contained methamphetamine. The glass smoking device contained methamphetamine. However, the methanol rinse of the plastic tube only showed the presence of iodine. According to Kempler, when methamphetamine is manufactured inside a residence, residual contamination remains. This is true because methamphetamine will spread throughout the structure and contaminate all surfaces.

Appellant unsuccessfully moved for directed verdict on all charges at the conclusion of the State's case. Appellant did not testify. Appellant renewed her motions for directed verdict at the conclusion of all the evidence. Appellant's motions were denied. The jury found appellant guilty of all charges and sentenced her to a total of 612 months in the Arkansas Department of Correction. The judgment and commitment order was entered on October 18, 2006. Appellant filed her notice of appeal on November 14, 2006.

*Standard of Review*

A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Gikonyo v. State*, 102 Ark.App. 223, 283 S.W.3d 631 (2008). The test for such motion is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Id.* The credibility of witnesses is an issue for the factfinder and not for the appellate court. *Id.* The fact-finder may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's. *Id.*

*I. Manufacturing methamphetamine*

Appellant was charged with the violation of Arkansas Code Annotated sec-

tion 5–64–401(a)(1) (Repl.2005), which provides that it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance, including the manufacturing of a controlled substance, methamphetamine. In order to convict appellant of this charge, the State was required to prove that appellant produced or prepared methamphetamine. *Smith v. State*, 68 Ark. App. 106, 109, 3 S.W.3d 712, 714 (1999). At trial, the State sought to prove that appellant manufacture methamphetamine as a principal or an accomplice. An accomplice shares the same guilt as the principal. *Cook v. State*, 350 Ark. 398, 86 S.W.3d 916 (2002). The mere presence of appellant cannot be the basis of a finding of guilt. *Hutcheson v. State*, 92 Ark.App. 307, 213 S.W.3d 25 (2005); *Wilson v. State*, 261 Ark. 820, 552 S.W.2d 223 (1977). To convict appellant of manufacturing methamphetamine it must be proven that she exercised control or dominion over the contraband. *Williams v. State*, 94 Ark. App. 440, 236 S.W.3d 519 (2006). Constructive possession may be implied when the contraband is under the joint control of the defendant and another, but joint occupancy alone is not sufficient to establish possession—the State must prove that the defendant exercised control and dominion over the contraband. *Id.*

■ Control and knowledge of contraband can be inferred from the circumstances, such as proximity of the contraband to the accused, whether the item is in plain view, and ownership of the property where the contraband is found. *See, e.g., Cherry v. State*, 80 Ark.App. 222, 95 S.W.3d 5 (2003) (affirming Cherry's conviction for simultaneous possession of drugs and a firearm, where the gun was found in Cherry's kitchen near items used to manufacture methamphetamine). In *Sweat v. State*, 25 Ark.App. 60, 752 S.W.2d 49

(1988), this court reiterated that joint occupancy, coupled with some other factor linking appellant to the contraband, is sufficient proof of constructive possession.

The evidence revealed that the items of contraband were found in the master bedroom; not in a common area of the trailer. Hogue claimed that the bedroom was his. There was no proof to the contrary. Sheriff Howard testified that he did not know where appellant came from when he asked to see her at the door. None of appellant's personal belongings were found in the master bedroom. There were no fingerprints linking appellant to the contraband. There was also no other evidence showing that appellant actually shared this room with Hogue. Based on these facts, there was no additional evidence linking appellant to the contraband other than her presence. Because we have held that presence alone is insufficient, appellant's conviction for manufacturing methamphetamine must be reversed and dismissed.

Reversed and dismissed part.

HART, GLADWIN, MARSHALL, and BAKER, JJ., agree.

PITTMAN, C.J., ROBBINS, VAUGHT, and HEFFLEY, JJ., dissent.

## II. Maintaining a drug premises

■ Appellant was charged with the violation of Arkansas Code Annotated section 5–64–401(a)(2) (Repl.2005), which provides that it is unlawful for any person

> [k]nowingly to keep or maintain any store, shop, warehouse, dwelling, building, or other structure or place or premise that is resorted to by a person for the purpose of using or obtaining a controlled substance in violation of this chapter or that is used for keeping a controlled substance in violation of this chapter.

To prove appellant's guilt of maintaining a drug premises, the State was required to prove that she helped to maintain a drug premise used for keeping controlled substances. Ark.Code Ann. § 5-64-402(a)(2) (Supp.2005); 60 Ark.App. 198, 962 S.W.2d 370 (1998). The State concludes that there is substantial evidence that appellant was actively involved in the manufacture of drugs. However, the State offers no proof that appellant maintained a drug premises.

 In order to convict on this evidence the circumstances must be consistent with the guilt of the accused and inconsistent with his innocence, and incapable of explanation on any other reasonable hypothesis than of guilt. When the circumstances are of such a character as to fairly permit an inference consistent with innocence, they cannot be regarded as sufficient to support a conviction. *Ayers v. State*, 247 Ark. 174, 444 S.W.2d 695 (1969).

Appellant argues that there was insufficient evidence that she maintained a drug premises. Examination of the facts shows that appellant did not own the trailer and that she was a mere resident. According to Holmes, appellant indicated that she had bee living there two weeks and that she could not give him permission to search. There was no evidence that appellant paid rent or that any of the utilities were in her name. There were no facts that connected appellant to maintaining a drug premises.

On appeal, the only issue we concern ourselves with is, when the evidence is viewed in the light most favorable to the State, does substantial evidence support the judgment? When the State's case is made of circumstantial evidence, if it leaves the fact-finder to speculation and conjecture, then the evidence is insufficient as a matter of law. *King v. State*, 100 Ark.App. 208, 266 S.W.3d 205 (2007).

Reversed and dismissed in part.

HART, MARSHALL, and BAKER, JJ., agree.

GLADWIN and ROBBINS, JJ., agree in part and dissent in part.

PITTMAN, C.J., and VAUGHT and HEFFLEY, JJ., dissent.

JOHN MAUZY PITTMAN, Chief Judge.

I respectfully dissent from our holdings that there is no substantial evidence to support appellant's convictions of manufacturing methamphetamine and of maintaining a drug premises. We have affirmed appellant's convictions of possession of drug paraphernalia with intent to manufacture and exposing a child to a chemical substance. Because both of those offenses require substantial evidence to prove that appellant intended to manufacture methamphetamine, and because appellant has admitted that she knew that methamphetamine was in fact being manufactured with that same paraphernalia at the time of her arrest, I think that the fact-finder could plainly infer that appellant was engaged in the manufacture of methamphetamine. To hold, as a matter of law, that the jury could not so find on this evidence is to me inexplicable.

Nor do I believe that there was insufficient evidence to support appellant's conviction for maintaining a drug premises. It is clear that no ownership interest in the premises is required to sustain such a conviction. *See Darrough v. State*, 322 Ark. 251, 908 S.W.2d 325 (1995). Thus, I would affirm this conviction based on the reasoning stated by Judge Gladwin in his separate opinion.

VAUGHT and HEFFLEY, JJ., join in this opinion.

ROBBINS, J., joins with respect to the discussion of appellant's conviction of manufacturing methamphetamine.

GLADWIN, J., joins with respect to the discussion of appellant's conviction of maintaining a drug premises.