Sharon H. GILMORE and Robert Vernon Gilmore *v.*
STATE of Arkansas

CA CR 01-950 87 S.W.3d 805

Court of Appeals of Arkansas
Division III
Opinion delivered October 30, 2002

304

*Hodson, Wood & Snively*, by: *Michael Hodson*, for appellants.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. The appellants, Sharon and Robert Gilmore, were arrested in the Wal-Mart park-

ing lot after buying various items including three packages of antihistamines, four cans of starter fluid, some butane, and an air freshener. A search of their car revealed four more packages of antihistamines and some butane tanks. After a jury trial, they were convicted of possession of drug paraphernalia with intent to manufacture methamphetamine, and sentenced to respective terms of five years and fifteen years in the Arkansas Department of Correction. From those convictions, comes this appeal.

Appellants raise several points for reversal, including an argument that their convictions are not supported by substantial evidence. We agree with this argument and, because it is dispositive, we limit our discussion to the sufficiency of the evidence.

Appellants were convicted of violating Ark. Code Ann. § 5-64-403(c)(5) (Supp. 2001), which provides that:

> [Expires April 30, 2002.] It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to manufacture methamphetamine in violation of this chapter. Any person who pleads guilty, nolo contendere, or is found guilty of violating the provisions of this subsection shall be guilty of a Class B felony and shall be fined an amount not exceeding fifteen thousand dollars ($15,000).

 In determining whether there is sufficient evidence to support a jury verdict, we view the evidence in the light most favorable to the appellee and affirm the verdict if there is substantial evidence to support it. Substantial evidence is evidence of sufficient force to compel a conclusion one way or another. It must be more than mere speculation or conjecture. *Crutchfield v. State*, 306 Ark. 97, 812 S.W.2d 459 (1991).

As the State notes in its well-done and thorough brief, the evidence against the appellants can be fairly summarized as follows: Officer Stacy Bohannan testified that she was at the Wal-Mart store in Springdale, Arkansas, when the store's loss-prevention officer notified her that the appellants were shopping in the store and selecting items that could be used in the manufacture of methamphetamine. Officer Bohannan watched appellants and observed that they appeared to be nervous. When appellants went

to the checkout aisle, Officer Bohannan left the store and described appellants to another police officer waiting outside.

When appellants left the store with their purchases, Officer Bohannan and the other officer approached appellants, told them that they had purchased items commonly used in the manufacture of methamphetamine, and asked to search their vehicle. Appellants allowed the search. Including the purchases appellants had just made at the Wal-Mart store, the officers found seven boxes of Equate antihistamine tablets, four cans of starting fluid, a can of butane, air freshener, and two propane bottles.

At trial, Drug Task Force Supervisor Mike Reynolds testified as an expert in the field of methamphetamine lab investigation. He stated that pseudoephedrine obtained from products such as Equate antihistamine tablets is the main precursor used in two methods of manufacturing methamphetamine. He stated that, when people have as much antihistamine as appellants did, it "gives rise to suspicions that they are going to use them for illicit purposes in the production or manufacturing of methamphetamine."

Supervisor Reynolds also testified that starter fluid has frequently been used in the manufacture of methamphetamine. He opined that the four cans of starter fluid possessed by appellants was an above-average amount for one person to use on one vehicle, and stated that "given the number of antihistamine tabs along with the starting fluid, it gives rise that [sic] maybe or probably this individual is going to cook or manufacture or help or assist someone else in the manufacture of methamphetamine."

With regard to the empty propane tanks, Supervisor Reynolds testified that they could be used in the manufacture of methamphetamine either to contain propane as a heat source, necessary in one method of manufacturing methamphetamine, or to contain anhydrous ammonia, which is used as a catalyst in another method of manufacturing methamphetamine. He also stated that he could tell that the propane tanks possessed by appellants had never been used to store anhydrous ammonia. He stated that the propane tanks, accompanied by the other items, would "give rise to a suspicion" that "would make one think that someone is going to

manufacture or help or assist someone in the manufacture of methamphetamine."

Supervisor Reynolds further testified that one of the three ways of ingesting methamphetamine is to smoke it, and that the butane seized from appellants could have been used to light methamphetamine if one were to ingest it by smoking it. He also stated that there were three main methods of manufacturing methamphetamine; that he could not say based on the items seized from appellants which of those methods they might have employed to manufacture methamphetamine; that many essential items necessary for the manufacture of methamphetamine were not present; and that it would be impossible to manufacture methamphetamine solely with the items in appellants' possession. Finally, he stated that "all the evidence in front of me altogether gives rise to a suspicion that they are cooking methamphetamine. I suspect them of cooking methamphetamine based upon what I see before me today."

■ Pursuant to Ark. Code Ann § 5-64-101(v) (Repl. 1997), in determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

> (1) Statements by an owner or by anyone in control of the object concerning its use;
> (2) Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance;
> (3) The proximity of the object, in time and space, to a direct violation of subchapters 1-6 of this chapter;
> (4) The proximity of the object to controlled substances;
> (5) The existence of any residue of controlled substances on the object;
> (6) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of subchapters 1-6 of this chapter; the innocence of an owner, or of anyone in control of the object, as to a direct violation of subchapters 1-6 of this chapter shall not prevent a finding that the object is intended for use, or designed for use, as drug paraphernalia;

(7) Instructions, oral or written, provided with the object concerning its use;

(8) Descriptive materials accompanying the object which explain or depict its use;

(9) National and local advertising concerning its use;

(10) The manner in which the object is displayed for sale;

(11) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(12) Direct or circumstantial evidence of the ratio of sales of the objects to the total sales of the business enterprise;

(13) The existence and scope of legitimate uses for the object in the community; and

(14) Expert testimony concerning its use.

In the present case, all of the items seized have legitimate uses, and the vast majority of the other factors are lacking. All of the items seized were legally obtained and have legitimate uses; no statements by appellants concerning a prohibited use were permitted into evidence; no instructions for making methamphetamine with these items were found; no controlled substances were found in connection with the items; and no residue of controlled substances was found in connection with the items. The case against appellants was based almost entirely on the expert testimony of Supervisor Reynolds, which can be fairly summarized as stating that mere possession of these legitimate items in the quantities and combination found gives rise to a suspicion that someone may use them to manufacture methamphetamine. However, as our supreme court noted in *Ravellette v. State*, 264 Ark. 344, 571 S.W.2d 433 (1978):

> No one should be deprived of his liberty or property on mere suspicion or conjecture. Where inferences are relied upon, they should point to guilt so clearly that any other conclusion would be inconsistent. This is so regardless of how suspicious the circumstances are.

264 Ark. at 347, 571 S.W.2d at 435. *See also Knight v. State*, 51 Ark. App. 60, 908 S.W.2d 664 (1995).

We do not fault the police officers in this case. Quite clearly, they had reasonable suspicion to justify detaining appel-

lants. Nevertheless, suspicion alone will not support their convictions, and we must therefore reverse.

Reversed and dismissed.

ROBBINS and BIRD, JJ., agree.