Gloria Surae KINCANNON *v*. STATE of Arkansas

CA CR 03-237                                                151 S.W.3d 8

Court of Appeals of Arkansas
Division IV
Opinion delivered March 3, 2004

[Rehearing denied April 14, 2004.]

*J. Sky Tapp*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Gloria Kincannon appeals from her conviction for delivery of a controlled substance, methamphetamine. She asserts that the trial court erred in admitting the testimony of a confidential informant as a rebuttal witness and that the trial court erred in admitting into evidence a bag of methamphetamine because the State failed to establish the chain of custody of the evidence. We agree that the trial court erred in admitting the testimony of the confidential informant; therefore, we reverse and remand.

Appellant's trial was conducted on October 7, 2002. The charges were the result of an undercover drug operation conducted on April 5, 2001, involving Officer Scott Bradshaw of the Arkansas State Police, and Billy Jack Wallace, a confidential informant. The operation was an ongoing investigation of Charlotte Nutt, a suspected drug manufacturer and supplier, who is not a party to this appeal. In the instant case, appellant was charged as an accomplice to Nutt.

Bradshaw and Wallace had made arrangements with Nutt to exchange red phosphorus for methamphetamine.[1] In the early morning hours of April 5, 2001, appellant accompanied Nutt to

---

[1] Red phosphorus is an ingredient used to manufacture methamphetamine.

the Cornerstone Family Worship Center near Amity, Arkansas.[2] They arrived at the worship center shortly before 2:00 a.m. When Bradshaw and Wallace walked over to Nutt's vehicle and Bradshaw asked Nutt if she had "it," referring to the methamphetamine, she replied that she had "both," indicating that she would buy the red phosphorus or would trade methamphetamine for the phosphorus. Wallace got into the backseat on the driver's side and Bradshaw got into the backseat on the passenger side. After a discussion, Bradshaw left Nutt's vehicle to retrieve the phosphorus, which was in his vehicle, while Wallace remained in Nutt's vehicle.

During Bradshaw's absence, appellant asked Nutt if she had checked Wallace for a wire. Wallace testified that appellant began checking him for a wire, but stopped when Nutt began doing the same thing. Bradshaw then returned and traded Nutt the red phosphorus in exchange for the methamphetamine. He stated that "they" told him it was 2.7 grams of methamphetamine and offered him a scale to weigh it, but he did not use the scale because it was dark and he could not see.

After the trade occurred, appellant asked for a pocketknife because the phosphorus did not smell strong enough. Wallace gave appellant a pocketknife and she dipped it in the red phosphorus. Appellant then told Bradshaw to light the phosphorus (to test its strength) and he did so. When Bradshaw was asked on direct examination, as part of the State's case-in-chief, whether he was present when appellant asked whether Wallace was wearing a wire, he stated that he was not present at that time and that he was informed about appellant's question later (by Wallace).

Bradshaw also testified concerning the chain-of-custody of the drugs seized in this case. Except for removing the drugs to process the paperwork, Bradshaw kept the drugs in his trunk until May 3, 2001, when he turned them over to Joseph Beavers, of the Narcotics Section of the CID. Beavers transported the drugs to the Arkansas State Crime Laboratory for analysis on the same day.

At trial, the State sought to admit State's Exhibit 1 as the methamphetamine that Bradshaw received in the April 5, 2001 transaction. However, the date marked on the evidence admission

---

[2] This transaction was to be the first of three buys that Bradshaw arranged involving Nutt, using Wallace as a confidential informant. As a result of the two subsequent investigations, Nutt was arrested on April 19, 2001, and April 29, 2001.

form submitted to the crime lab was March 22, 2001, not April 5, 2001. Bradshaw explained that the mistake was a typographical error and that he "just tabbed past the date instead of punching in the correct date." He indicated that March 22, 2001, was the date of another drug buy. However, he stated that he was sure that Exhibit 1 contained the drugs that he received on April 5, 2001, because that was the only buy he made from Nutt in Pike County. He also stated that the April 5 transaction was the only transaction in which he was involved in which appellant was also involved.

Appellant objected to the admission of State's Exhibit 1 based on the discrepancy in the dates. The trial court found that the typographical error went to the credibility of the evidence, not its admissibility. The court then admitted State's Exhibit 2, the crime-lab report, over appellant's objection. This report indicated "amphetamine, methamphetamine, pseudoephedrine (2.477 Gram(s))."

Before the State rested, it attempted to call Wallace as a witness as part if its case-in-chief. Appellant objected on the ground that the State never provided her with Wallace's name. The trial court allowed appellant to interview Wallace, but ultimately sustained appellant's objection. Wallace did not testify as part of the State's case-in-chief.

In appellant's defense, she testified that Nutt asked appellant to accompany Nutt to meet with Wallace to purchase a satellite receiver for Nutt's daughter. In response to the State's cross-examination, appellant denied that she participated in the drug transaction and that she said anything about the red phosphorus or asked anyone for a knife to light the phosphorus. She testified that when she realized that a drug transaction was taking place, she told Nutt that was "too much information" for her and that she "didn't want to be in this." However, she admitted that she asked Nutt, "[H]ave you even checked him [Wallace] for a wire?"

After appellant testified, the State called Wallace as a rebuttal witness. Appellant again objected on the ground that she had not been notified that Wallace would be a witness. The State countered that it was not required to turn over the names of its rebuttal witnesses. The trial overruled appellant's objection.

Wallace testified that both Nutt and appellant asked whether he was wearing a wire and that appellant began to pat him down before Nutt took over and patted him down. He also corroborated Bradshaw's testimony that appellant asked for a knife to test the phosphorus, and asked Bradshaw to light it.

After Wallace testified, appellant renewed her motions, which the trial court denied. Appellant was found guilty and was sentenced to serve twenty-four months in the Arkansas Department of Correction. This appeal followed.

## I. Rebuttal Testimony

Appellant first argues that the trial court erred in allowing Wallace to testify as a rebuttal witness because the State never disclosed his identity to her before trial and because Wallace's testimony was not true rebuttal testimony. The State is not required to disclose rebuttal witnesses during discovery. *Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996). The rationale is that, until the defense's case has been presented, the State cannot know of any witnesses needed for rebuttal. *Id.* It is within the trial court's discretion whether to admit rebuttal testimony, and the appellate court will not reverse this determination absent an abuse of that discretion. *Id.* Rebuttal evidence is evidence that is offered in reply to new matters, even if it overlaps with the evidence presented in the State's case-in-chief, as long as the testimony is responsive to evidence presented by the defense. *Pyle v. State*, 314 Ark. 165, 862 S.W.2d 823 (1993). The scope of a rebuttal witness's testimony is accorded wide latitude and will not be restricted merely because it could have been presented on direct examination. *Birchett v. State*, 289 Ark. 16, 708 S.W.2d 625 (1986). However, the State is not allowed to elicit evidence from a defendant for the purpose of presenting a rebuttal witness. *Birchett, supra.*

We hold that the trial court erred in admitting Wallace's testimony because the State, not appellant, elicited the testimony that the State sought to rebut and because Wallace's testimony was not in response to any new matters presented by appellant. While Wallace did *contradict* appellant's testimony that she did not check him for a wire and that she did not ask for a knife to test the phosphorus, those issues were *first* raised during Bradshaw's testimony as part of the State's case-in-chief and were not raised again until the State's cross-examination of appellant. Bradshaw testified that appellant asked for a knife, that Wallace gave her a knife, and that she stuck the knife in the phosphorus and asked Bradshaw to light the phosphorus. Although Bradshaw did not testify regarding appellant's statement concerning a wire, the State asked Bradshaw, on direct examination as part of its case-in-chief, if he was present when appellant asked about a wire, and he indicated that he was

not. On cross-examination, in response to the State's questions, appellant denied her involvement with the transaction. While she admitted that she asked Nutt if she had checked Wallace for a wire, she denied that she checked anyone for a wire and denied any involvement with the phosphorus.

■■ Thus, the State improperly elicited from appellant the information that it already knew it would rebut with Wallace's testimony. While the State is certainly allowed to question its witnesses and cross-examine the defendant's witnesses regarding the scope of a defendant's involvement in a crime, it is not allowed to *elicit* the testimony which *necessitates* rebuttal testimony. *Isbell, supra; Birchett, supra.* Where the State elicits such testimony from a defendant, that evidence is not in response to the evidence presented by the defense, and as such, is not true rebuttal testimony because it is not offered in reply to new matters raised by the defense. *Isbell, supra; Birchett, supra.* Simply put, the rationale for not requiring the State to disclose rebuttal witnesses does not allow the State to withhold the identity of a witness and to then orchestrate the need for the rebuttal testimony of that witness. *Birchett, supra.* Finally, we note that the prosecutor conceded when he argued that an audiotape of the transaction should be admitted that Wallace's testimony was part of the *res gestae* in this case. Therefore, the State is hard-pressed to argue that the same evidence that it fought to present as proof of the *res gestae* in its case-in-chief would merely be responsive to new matters asserted by the defense. Thus, we hold that, under the circumstances of the instant case, the trial court erred in admitting Wallace's testimony as rebuttal testimony.[3]

## II. Chain of Custody

Appellant's second argument is that the trial court erred in admitting into evidence State's Exhibit 1, which the State asserted was the bag of methamphetamine seized from Nutt during the April 5, 2001 transaction. Because this issue is likely to arise during retrial, we next address this argument. *Pyles v. State*, 329 Ark. 73, 947 S.W.2d 754 (1997).

---

[3] We note that the Arkansas Supreme Court has stated, in a case involving the State's failure to disclose an informant's identity pursuant to the discovery rules, that if an informant is present or participated in the crime, it would be prejudicial error for the State not to reveal his identity. *McDaniel v. State*, 294 Ark. 416, 743 S.W.2d 795 (1988).

■■    Appellant maintains that due to discrepancies in the date of the offense and the date on the form submitted to the crime lab, the chain of custody was not adequate to prove that the drugs tested were the same drugs obtained from Nutt on April 5, 2001. The purpose of establishing the chain-of-custody is to prevent the introduction of evidence that has been tampered with or is not authentic. *Crisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997). The trial court must be satisfied within a reasonable probability that the evidence has not been tampered with, but it is not necessary for the State to eliminate every possibility of tampering. *Id.* Minor uncertainties in the proof of chain-of-custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law. *Id.* Our courts have required that the chain-of-custody for interchangeable items like drugs or blood needs to be more conclusive than for other evidence. *Id.* We do not reverse a trial court's ruling on the admissibility of evidence under the chain-of-custody rule absent a showing that the court clearly abused its discretion. *Jones v. State*, 82 Ark. App. 229, 105 S.W.3d 835 (2003). We hold that the trial court did not abuse its discretion in admitting State's Exhibit 1 because the State, within a reasonable probability, established the chain of custody.

According to Bradshaw's testimony, on April 5, 2001, he received a ziplock bag containing what Nutt told him was 2.7 grams of methamphetamine. Pursuant to his normal routine, he labeled the bag with Nutt's name and placed the drugs in his trunk. The drugs remained in his trunk until he took them out to complete his paperwork. Approximately two weeks later, he completed the paperwork on the drugs, including the report-of-investigation form, the CID case form, and the receipt for evidence/property form. Thereafter, the drugs remained in his trunk until he turned them over to Beavers, who took the drugs to the crime lab.

On the report of investigation form, Bradshaw listed the date of the incident as April 5, 2001, indicated Nutt as the suspect, and indicated that he received 2.7 grams of methamphetamine. On the CID case form, Bradshaw provided a narrative of the incident and named both Nutt and appellant as participants. He also stated on the case form that he kept the drugs secure until they were turned over to the crime lab.

On the receipt for evidence/property form, the date of confiscation is listed as April 5, 2001, although there is no date of receipt on the form. The form indicates that the evidence was received from Nutt at the Cornerstone Family Workshop Center in Amity, Arkansas (Pike County). The evidence was described as: "One clear plastic corner bag containing approximately 2.7 grams of an off-white powder substance believed to be meth." The evidence submission form that Bradshaw (through Beavers) submitted to the crime lab, indicates May 3, 2001, as the date the drugs were received at the lab. This form also lists Nutt as the suspect, and lists the date of offense as March 22, 2001. The description of the evidence is identical to the description of the evidence in the receipt-for-evidence/property form.

Appellant maintains that the discrepancies in the chain-of-custody are not minor discrepancies. First, she notes that the date on State's Exhibit 1 is different from the date of the offense and is the same date as another buy that Bradshaw made. Appellant relies on the fact that Bradshaw made two additional arrests of Nutt subsequent to the April 5 incident but prior to the submission of the drugs to the crime lab. It took Bradshaw approximately two weeks after April 5, 2001, to complete the paperwork, and he admitted that by that time, he had made one or two additional buys from Nutt. Bradshaw could not remember whether the drugs from the subsequent arrests were also stored in his trunk with the drugs from the April 5 arrest. He further testified that at the time he was completing the paperwork, he "was new to this" and did not know whether there was enough evidence to prosecute appellant.

However, the evidence was sufficient to establish within a reasonable probability that the drugs had not been tampered with. Bradshaw also testified that he wrote the April 5 date on the ziplock bag. He further testified that the drugs remained secure in his trunk, except for the time that he took them out to process the paperwork. In addition, he testified that he was sure that Exhibit 1 contained the drugs that he received on April 5, 2001, because that was the only buy he made from Nutt in Pike County. He also stated that the April 5 transaction was the only transaction in which he was involved in which appellant was also involved. It is significant that the incorrect date was not written on Exhibit 1, the ziplock bag that contained the drugs. Rather, the incorrect date was only on the evidence submission form that was given to the crime lab when the bag of drugs was submitted. Bradshaw explained that he simply tabbed over the date of the

offense instead of typing in the April 5, 2001 date. As the finder of fact in evidentiary matters, it was within the court's discretion to accept Bradshaw's explanation of the error. *Henderson v. State*, 349 Ark. 701, 80 S.W.3d 374 (2002).

■ Finally, although appellant did not challenge below the chain of evidence based on the discrepancy in the description of the weight of the drugs, she does so now. We simply note that the discrepancy of less than one-quarter of an ounce was minor, especially considering that Bradshaw did not weigh the drugs but relied on Nutt's assertion that he was receiving 2.7 grams of methamphetamine. The Arkansas Supreme Court has found a similarly minor discrepancy in the weight of the drugs to be insufficient to raise a reasonable probability that a break in the chain-of-custody occurred. *See Guydon v. State*, 344 Ark. 251, 39 S.W.3d 767 (2001)(affirming where the difference between the description of the drugs and the actual weight was .1172 grams and .0817 grams, respectively). Further, there was no discrepancy in the description of the drugs seized and the drugs submitted to the Crime Lab, as was the case in *Crisco, supra,* because the forms used in this case consistently described the substance as an off-white powder believed to be methamphetamine.

Reversed and remanded.

ROBBINS and NEAL, JJ., agree.