Alan Ray CLUCK  *v.*  STATE of Arkansas

CA CR 04–710                                209 S.W.3d 428

Court of Appeals of Arkansas
Opinion delivered June 8, 2005

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. Alan Ray Cluck was convicted by a Crawford County jury of possession of drug paraphernalia with intent to manufacture methamphetamine, and he was sentenced to 180 months in the Arkansas Department of Correction. He argues that the trial court erred when it: 1) allowed the State to introduce a witness as his parole officer for his prior convictions for conspiracy to manufacture methamphetamine and possession of methamphetamine with intent to deliver when these facts had "minimal independent relevance" and the probative value did not substantially outweigh the danger of unfair prejudice pursuant to Arkansas Rules of Evidence 404(b) and 403; 2) allowed the State to call as a "rebuttal witness" the arresting officer from his previous trial where the witness was not disclosed and the witness was allowed to testify about items that were seized from his house in a prior, unrelated search in 1998, and because the evidence was unduly prejudicial and cumulative; 3) denied his motion for a directed verdict when the State's evidence showed only the presence of common household items, there was no evidence that he intended to use the items to manufacture methamphetamine, several ingredients necessary to produce methamphetamine were not present, and there was no evidence that any methamphetamine was found at the residence; and 4) refused to give his proffered jury instructions concerning the definition of drug paraphernalia and a lesser-included offense of "attempted possession of drug paraphernalia with intent to manufacture methamphetamine." We find merit in Cluck's arguments concerning the evidentiary rulings, and we reverse and remand for a new trial.

Prior to trial, Cluck filed a motion in limine seeking to limit the testimony of his probation officer, Heather Douglas, who was one of the officers who had conducted a consensual search of his home and outbuildings. Cluck sought to exclude testimony that he was on parole, that his parole was revoked after the search, and that Douglas was a parole officer. The State argued that "the facts are so intertwined in this case that it would be impossible for me to put her on the stand and not ask her occupation. I believe the case law allows you to ask her, at least: Where do you work?" The trial court ruled that the State could inquire as to where Douglas worked.

The State then sought and received conditional permission to admit in its case-in-chief evidence of Cluck's convictions for conspiracy to manufacture methamphetamine and possession of methamphetamine with intent to deliver. The State contended that the evidence was "independently relevant" to refute Cluck's defense. The trial court conditioned the use of the evidence on Cluck raising "ignorance and lack of knowledge, et cetera."

In the State's case-in-chief, Will Dawson, an investigator with the 12th and 21st Judicial Drug Task Forces testified that he received information that Cluck had purchased iodine from a farmers' co-op. According to Dawson, he drove by Cluck's residence to see if there were animals present, but found none. He later went to Cluck's residence with two other officers, Heather Douglas and Suzanne Bobbitt, but did not find Cluck at home. At Douglas's suggestion, the police looked for Cluck at his brother's house and made contact with him. Dawson said he asked Cluck what the iodine was for, and Cluck told him he "bought it for a friend." Dawson stated that Douglas had consent to search Cluck's vehicle, and she discovered a bottle of hydrogen peroxide and a bottle of alcohol. Dawson then received Cluck's consent to search his residence and outbuildings. Dawson sponsored into evidence photos of the items that were seized from Cluck's vehicle and residence: a toluene can; a box of table salt and plastic jugs containing muriatic acid, drain cleaner, Red Devil lye, isopropyl alcohol; Equate allergy and sinus pills; a box of Dollar General cold and allergy pills; a short length of rubber tubing and a box of disposable PVC gloves; a used coffee filter; a bottle of hydrogen peroxide and a bottle of rubbing alcohol; and a syringe.

Dawson testified that the toluene can was empty, that a single coffee filter was found on top of the can, and that both items were found in Cluck's garage. On cross-examination, Dawson admitted that he did not have the filter analyzed for drug residue. Dawson stated that the Red Devil lye, isopropyl alcohol, drain cleaner, and muriatic acid were found under the sink in Cluck's kitchen, and that the salt was found on the counter. According to Dawson, the cold and allergy pills were found by Douglas, but he had discovered the tubing and disposable gloves. He also found the syringe, but he admitted that the State Crime Lab had not detected any drug residue in it. On cross examination, Dawson admitted that all the items seized had legitimate uses, and there was no evidence such as the presence of glassware or telltale odors that would indicate that a meth lab was present on the premises.

Before calling its next witness, Heather Douglas, the State secured the trial court's permission for her to testify that she was Cluck's probation officer and that Cluck was on probation for conspiracy to manufacture methamphetamine and for possession of methamphetamine with intent to deliver. She also confirmed that she had found a bottle of hydrogen peroxide and a bottle of rubbing alcohol in Cluck's vehicle and the empty toluene can and the coffee filter in the garage.

The State then called Mitch Carolan, a narcotics investigator with the Arkansas State Police, as an "expert in the area of drug paraphernalia and the manufacturing process with respect to methamphetamine." Carolan explained the two most common methods of manufacturing methamphetamine: the "red phosphorus method" which has as its "three main ingredients iodine crystals, pseudoephedrine, and red phosphorus; and the "anhydrous ammonia" method, which utilizes anhydrous ammonia, lithium metal, and pseudoephedrine. Carolan explained how the items seized from Cluck could be used in the manufacture of methamphetamine: the toluene to "draw your meth out of your cook;" the coffee filter to filter out the ephedrine or pseudoephedrine, to "pull red phosphorus," dry out iodine crystals, or to salt-out the drugs; the isopropyl alcohol in the "pill soak;" the muriatic acid, drain cleaner, salt, and tubing along with aluminum foil to make an "HCl generator;" the Red Devil lye to adjust the pH of the cook; the disposable gloves to protect the person making the meth from the chemicals; the pills as a source of pseudoephedrine; the hydrogen peroxide to produce iodine crystals; and the syringe commonly found in the course of methamphetamine investigations. On cross-examination, Carolan admitted that all of the items in question had legitimate uses, that there were many ingredients missing from each of the manufacturing methods that he described, and that a person would be unable to manufacture methamphetamine with the materials and ingredients that were seized by the police. However, on redirect, Carolan opined that it appeared "that someone is gathering the material to manufacture." He also opined that the assemblage of materials suggested that someone was intending to use the "red phosphorus method" of manufacturing methamphetamine.

The State rested, and Cluck moved for a directed verdict, arguing that the absence of two of the main ingredients required for either of the manufacturing methods brought his case within the "purview" of our decision in *Gilmore v. State*, 79 Ark. App.

303, 87 S.W.3d 805 (2002). He also asserted that there was no evidence that the pills that were seized contained pseudoephedrine, no evidence of his intent to manufacture methamphetamine, that the items themselves were insufficient to make methamphetamine, and that there was no controlled substance and no residue found. The trial judge denied the motion, finding the quantity of the pills and the presence of the other materials enough to submit the question to the jury.

Cluck called his mother, Patricia King, to testify. She stated that Cluck had only lived in the house where the alleged contraband was seized for about a week prior to his arrest; that the alleged contraband was mostly common household chemicals left on the premises or used by Cluck to assist her with maintaining her rental property; that Cluck had allergies for which he took over-the-counter cold medications; and that Cluck did not even have a key to the garage. On cross-examination, King admitted that the garage door "may have been off its hinges," but she reaffirmed her belief that someone could just pull the door open. She also rejected the State's assertion that it had discovered a large amount of allergy medication, claiming that Cluck went through a box in a week. She stated that the muriatic acid was used by Cluck to clean the brick on one of her rental properties and that she herself had two bottles of drain cleaner, Red Devil lye and alcohol in her house. King, however, could not explain why Cluck had a syringe in his kitchen or why he had purchased iodine at the feed store.

Cluck's father, Jim Dale Cluck, testified that he used iodine on his cattle ranch to help stop rock-foot disease. He also stated that his son ran iodine through water lines to medicate the chickens he raised. On cross examination, he asserted that Cluck had purchased iodine for him "once or twice," and he believed that Cluck had last visited him in June or July, shortly before Cluck was arrested.

The State called Dawson in rebuttal, and he testified that he purchased identical pills to the ones that were seized at Cluck's residence, but were not produced at trial. According to Dawson, he read the label of the pills he purchased, and they contained pseudoephedrine. On cross-examination, Dawson conceded that Cluck did not have more than the "legal amount" of ephedrine.

The State then called Sergeant Jerry Pittman of the Crawford County Sheriff's Department to testify about what he had seized from Cluck's residence in 1998, which was evidence in

Cluck's conspiracy-to-manufacture-methamphetamine conviction. Over Cluck's objection, Pittman testified that law enforcement officers seized a bottle of iodine crystals, a plate of three syringes, a used razor blade with residue on it, baggies with a dirty-white powder residue, three cans of Red Devil lye, a baggie containing tubing, some plastic PVC pipe, an open package of coffee filters, used coffee filters with red stains on them, a bottle of Sudafed, a notebook containing methamphetamine recipes, drain cleaners, rock salt, a can of acetone, muriatic acid, red phosphorus, methamphetamine, pseudoephedrine, B-12 cutting agent, glassware, rubber gloves, paint thinner, marijuana, three coffee pots containing residue, and lithium. The State then rested and Cluck timely renewed his directed verdict motion.

Preservation of Cluck's right against double jeopardy requires that we consider his challenge to the sufficiency of the evidence before we consider alleged trial error even though the issue was not presented as the first issue on appeal. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Cummings v. State*, 353 Ark. 618, 110 S.W.3d 272 (2003). We have often stated the test in determining the sufficiency of the evidence — whether there is substantial evidence to support the verdict. *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998). Substantial evidence is direct or circumstantial evidence that is forceful enough to compel a conclusion one way or another and which goes beyond mere speculation or conjecture. *Id.* In making this determination, we consider evidence both properly and improperly admitted. *Id.* On review, this court neither weighs the evidence nor evaluates the credibility of witnesses. *Kirwan v. State*, 351 Ark. 603, 96 S.W.3d 724 (2003).

Cluck argues that the trial court erred when it denied his motion for a directed verdict because the State's evidence showed only the presence of common household items, there was no evidence that he intended to use the items to manufacture methamphetamine, several ingredients necessary to produce methamphetamine were not present, and there was no evidence that any methamphetamine was found at the residence. He urges us to find this case analogous to *Gilmore v. State, supra*, where we reversed and dismissed a conviction for possession of drug paraphernalia with intent to manufacture when the appellant was found in possession of less than a complete compliment of ingredients to manufacture

methamphetamine, all of the items seized had "legitimate uses," and "the vast majority" of the factors listed in Arkansas Code Annotated section 5-64-101(v) (Repl. 1997) were lacking. Cluck asserts that the presence of common household items, in the quantities and combination found, only give rise to a "suspicion" that someone may use the items to manufacture methamphetamine. We disagree.

We are mindful that this case is similar to *Gilmore* in that there obviously was an incomplete set of ingredients required to manufacture methamphetamine. It is also apparent that the "vast majority" of the fourteen factors listed in section 5-64-101(v) were not present in this case. As in *Gilmore*, there was expert testimony, in this case, however, as offered by Investigator Dawson, placed into evidence the opinion that the items seized at Cluck's residence were "used in the manufacture of methamphetamine." While it is true that Dawson also confirmed that methamphetamine could not be manufactured from the ingredients found on the scene, that portion of Dawson's testimony is not considered by us under our standard of review. *Cummings v. State, supra.* Unlike *Gilmore*, however, in the instant case, there was also considerable evidence about Cluck's prior conviction for conspiracy to manufacture methamphetamine.

Furthermore, as noted previously, when we review a case for the sufficiency of the evidence, we consider evidence both properly and improperly admitted. *Sanford v. State, supra.* Evidence of the latter variety abounded in this case. First, we note that Douglas was allowed to testify that she was Cluck's probation officer. This testimony almost certainly predisposed the jury to believe that Cluck was inclined to engage in unlawful activity. Secondly, there was testimony that a syringe was found in Cluck's kitchen. A syringe has no use in the manufacture of methamphetamine, and could be considered to be irrelevant, particularly in light of the fact that no methamphetamine residue was discovered on or in the syringe by the State crime lab. However, in this case, the trial court allowed Deputy Pittman to establish a link between the syringe and the manufacture of methamphetamine when he was allowed to testify over Cluck's objection about Cluck's 1998 arrest and subsequent conviction for conspiracy to manufacture methamphetamine. Furthermore, Pittman's in-depth testimony concerning the material that was seized from Cluck's residence in 1998 provided the jury with evidence that would enable it to find

that Cluck acted in conformity with his prior bad act. While we are mindful that the admission of this evidence is not permissible under Rule 404(b) of the Arkansas Rules of Evidence, we must still give it maximum probative value under our sufficiency-of-the-evidence review. *Id.* Accordingly, we hold that the evidence was sufficient to allow a jury, without resorting to speculation or conjecture, to convict Cluck of possession of drug paraphernalia with intent to manufacture.

We next consider Cluck's first and second points, which both concern allegations that the trial court made erroneous evidentiary rulings. For brevity's sake, we will combine these arguments. Our standard of review is as follows: matters pertaining to the admissibility of evidence are left to the sound discretion of the trial court, and we will not reverse such a ruling absent an abuse of that discretion. *See, e.g., Bell v. State,* 334 Ark. 285, 973 S.W.2d 806 (1998). Nor will we reverse absent a showing of prejudice, as prejudice is not presumed. *Hill v. State,* 337 Ark. 219, 988 S.W.2d 487 (1999).

Cluck first contends that the trial court erred when it allowed the State to elicit testimony from Douglas that she was his parole officer for his prior convictions for conspiracy to manufacture methamphetamine and possession of methamphetamine with intent to deliver when these facts had "minimal independent relevance" and the probative value did not substantially outweigh the danger of unfair prejudice pursuant to Arkansas Rules of Evidence 404(b) and 403. Cluck also argues that the trial court erred when it allowed the State to call as a "rebuttal witness" Deputy Pittman, the arresting officer from his previous trial where the witness was not disclosed and was allowed to testify about items that were seized from his house in a prior, unrelated search in 1998, because the evidence was unduly prejudicial and cumulative. We agree and hold that the decision to allow the admission of this evidence constituted reversible error.

██ Arkansas Rule of Evidence 404(b) states:

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Moreover, even if the evidence is relevant under Rule 404(b), it may be excluded if its probative value is substantially outweighed by the

danger of unfair prejudice or confusion of the issues. Ark. R. Evid. 403. The balancing of probative value against unfair prejudice is a matter, in the first instance, for the trial court. *See Parrish v. Newton*, 298 Ark. 404, 768 S.W.2d 17 (1989).

As noted previously, the trial court allowed the State to elicit from Heather Douglas, one of the officers who searched Cluck's residence, that she was Cluck's parole officer. Cluck made a timely Arkansas Rules of Evidence 403/404(b) objection. At trial, the prosecutor argued that the testimony was admissible because "I believe that the case law allows you to ask [Douglas], at least: Where do you work?"

We hold that there was clearly no probative value in introducing the fact that Douglas was Cluck's parole officer and that the prejudice is manifest. We believe that allowing her to so testify was tantamount to making Cluck appear in the court room in shackles or prison garb. Furthermore, contrary to the State's bald assertion at trial that "the case law" permitted such a line of inquiry, our research has uncovered not a single case that stands for that proposition. Accordingly, we hold that allowing Douglas to so testify was an abuse of discretion.

■ We also hold that the trial court erred when it permitted the State to bolster its weak case with so called "rebuttal testimony" by Deputy Pittman about Cluck's six-year-old conspiracy-to-manufacture-methamphetamine conviction. In the first place, we agree with Cluck that it was not true rebuttal testimony. In *Birchett v. State*, 289 Ark. 16, 708 S.W.2d 625 (1986), our supreme court held that a true rebuttal witness must "merely" respond to evidence presented by the defense. Here, the so-called rebuttal testimony did not "merely" respond to Cluck's contention that the alleged contraband had legitimate uses, but delved into the details of a prior crime. We are mindful that Cluck's prior convictions for drug-related offenses were relevant to prove that the alleged contraband was indeed drug paraphernalia, *see* Arkansas Code Annotated section 5-64-101(v), and therefore, evidence of those convictions could be introduced in the State's case-in-chief. This fact, however, does not make it admissible in "rebuttal." *See Birchett v. State, supra.*

■ Cluck further argues, and we agree, that "the sheer number of items to which Sergeant Pittman testified were extremely prejudicial, and should have been excluded." Pittman's

testimony went well beyond the mere existence of a drug manu-
facturing conviction. We believe that Pittman's detailed descrip-
tion of what he seized in 1998 had the effect of filling in the
missing items so as to point a jury toward the inevitable conclusion
that Cluck did not innocently possess the alleged contraband.
Because methamphetamine is produced from common household
items, we believe the importance of this testimony cannot be
understated. It is clear to us that Pittman's testimony was offered
solely to show that Cluck was acting in conformity with his prior
bad acts. That purpose is, of course, not permissible under Rule
404(b)[1]. We hold that the decision to admit Pittman's testimony
concerning the 1998 search and seizure of Cluck's residence was
also an abuse of discretion. We therefore reverse and remand this
case for a new trial because of these evidentiary errors.

Because it is likely to arise on retrial, we will briefly address
Cluck's fourth point in which he argues that the trial court erred
when it refused to give his proffered jury instructions concerning
the definition of drug paraphernalia and a lesser-included offense
of "attempted possession of drug paraphernalia with intent to
manufacture methamphetamine." We find no error in the trial
court's rejection of Cluck's proffered jury instructions.

■ The trial court instructed the jury with the definition
of drug paraphernalia found in AMCI 6418.2. This instruction
contains a notation stating that the statutory definition found in
Arkansas Code Annotated section 5-64-101(v) contains a list of
examples and the statute should be reviewed in formulating an
appropriate instruction for a particular case. Cluck's proffered
instruction, however, set out the entire list of items included in the
statute, without the required tailoring. An instruction must be
germane to the factual issues before the trial court's refusal to give
an instruction can be considered error. *Stevens v. State*, 246 Ark.
1200, 441 S.W.2d 451 (1969).[2]

---

[1] In his brief on appeal, Cluck incorporated the argument he made to the trial court
by reproducing verbatim his argument to the trial judge concerning the State's intention to
introduce through Pittman's testimony evidence supporting the 1998 conviction. Cluck
argued that the State was "trying to bolster their case with prior bad acts," and that it was a
violation of "Rule 404."

[2] We note as well that the instruction that the trial court did give was also not
sufficiently tailored to reflect the charges in this case. Cluck was charged with possession of

■ We find no error in the trial court's refusal to give Cluck's second proffered instruction concerning a lesser-included offense of "attempted possession of drug paraphernalia with intent to manufacture methamphetamine." While it is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by even the slightest evidence, *see Fudge v. State*, 341 Ark. 759, 20 S.W.3d 315 (2000), it is not error to refuse an instruction where there is no rational basis for a verdict acquitting the defendant of the charged offense and convicting him on the lesser offense. *See Doby v. State*, 290 Ark. 408, 720 S.W.2d 694 (1986). Here, there is simply no rational basis for giving Cluck's proffered lesser-included instruction on the offense of attempt to possess drug paraphernalia with the intent to manufacture methamphetamine.

The State attempted to convict Cluck for possession of drug paraphernalia with intent to manufacture methamphetamine despite the fact that the evidence established that there was present an incomplete set of ingredients and hardware necessary to manufacture the drug. In light of our holding in *Gilmore v. State, supra*, which completely embraces the fact that methamphetamine labs use common household items in the production of the drug, the outcome of this case necessarily turns on the issue of whether or not the collection of the alleged contraband could qualify as drug paraphernalia. Accordingly, there was no rational basis for giving Cluck's proffered lesser-included instruction.

Reversed and remanded.

BIRD, GLOVER, and ROAF, JJ., agree.

CRABTREE and VAUGHT, JJ., concur in part; dissent in part.

TERRY CRABTREE, Judge, concurring and dissenting. The appellant in this case was convicted in a jury trial of possession of drug paraphernalia with intent to manufacture metham-

---

drug paraphernalia with intent to manufacture methamphetamine, yet the instruction that was given to the jury defined drug paraphernalia in part as material used in inapplicable processes: "planting, propagating, cultivating, growing, harvesting." The instruction also listed equipment used in "injecting, ingesting, inhaling, or otherwise introduce into the human body." Clearly this category of paraphernalia had no connection to manufacturing. However, because a syringe was seized in this case, we cannot help but believe that this overly broad instruction could have influenced the outcome of the trial.

phetamine in violation of Ark. Code Ann. § 5-64-403(c)(5) (Supp. 2003). Appellant raises four issues for reversal of that conviction. He argues: (1) that the trial court erred in admitting testimony as to his previous methamphetamine-related convictions and his status as a parolee under Rule 404(b) of the Arkansas Rules of Evidence, and in finding that the probative value of this evidence was not outweighed by unfair prejudice under Ark. R. Evid. 403; (2) that the trial court erred in permitting the State to offer rebuttal testimony concerning items associated with the manufacture of methamphetamine found in a previous search because it was not responsive to evidence presented by the defense; (3) that the evidence is insufficient to support the guilty verdict; and (4) that the trial court erred in refusing his proffered jury instructions.

In an opinion that clouds the issues presented on appeal and their factual underpinnings, the majority grudgingly holds that there is sufficient evidence to support the jury's finding of guilt, and it affirms the trial court's refusal of the proffered jury instructions. The majority reverses appellant's conviction ostensibly because (1) appellant's parole status was revealed and (2) the rebuttal testimony did not "merely" respond to evidence presented by the defense and was not admissible under Rule 404(b), an argument appellant does not make on appeal. Curiously, the majority does not directly address appellant's primary contention that the testimony concerning his prior convictions was not admissible under Rule 404(b).[1]

I concur in the majority's decision that there is substantial evidence to support the conviction, but I do not join in that portion of the opinion, and thus write separately. I agree that the trial court did not err by failing to give appellant's proffered jury instructions. I dissent because the evidence of appellant's prior misconduct meets the test of independent relevancy and was not

---

[1] Citing Arkansas Code Annotated section 5-64-101(v), the majority states that appellant's prior convictions were relevant as proof that the items appellant possessed were drug paraphernalia and were thus admissible in the State's case-in-chief. The subsection of the statute referenced by the majority provides that "[p]rior convictions, if any, of an owner, or anyone in control of the object, under any state or federal law relating to *any* controlled substance" are relevant in determining whether an object is drug paraphernalia. Although the statute so states, the issue in this case involves the admissibility of evidence, and I submit that prior convictions must pass muster under the rules of evidence, in particular Rule 404(b), before being admitted into evidence. It is not enough to say that a statute appears to permit their introduction. *See, e.g., Sypult v. State*, 304 Ark. 5, 800 S.W.2d 402 (1990).

unfairly prejudicial; the testimony that appellant was on parole was not prejudicial; and the testimony recounting items found in a prior search was proper rebuttal testimony.

The evidence presented at trial reveals the following. Will Dawson, an investigator with the drug task force in Sebastian and Crawford Counties, testified that he checked co-ops and other stores that sell iodine, an ingredient in the manufacture of methamphetamine. Some of the stores kept a list of iodine purchasers and take ID's, while one store wrote down the tag numbers of purchasers. On July 3, 2003, Dawson received information that iodine had been purchased by someone with the Arkansas tag number 578 HDM. The tag returned to appellant on a 1991 Dodge Dynasty. Dawson took a picture of appellant to the worker at the co-op who identified appellant as the person who had purchased the iodine.

Dawson said that iodine is used on dogs and to treat cattle sores, so he drove by appellant's residence to determine whether appellant had any animals; he saw none. On July 8, Dawson, Heather Douglas, and another officer made contact with appellant at his brother's house. Douglas, a parole officer, "had consent" to search appellant's vehicle. She looked inside and found a bottle of hydrogen peroxide and a bottle of alcohol, which appellant immediately claimed as his own. Appellant told Dawson that he had purchased the iodine "for a friend."

In a subsequent search of appellant's residence and outbuilding, the officers found Red Devil Lye and two other kinds of drain cleaner, salt, isopropyl alcohol, and muriatic acid. All but the salt were found underneath the kitchen sink. A syringe was found in the trash can. Thirteen blister packages of cold medication containing pseudoephedrine was discovered in the house, as was tubing and disposable vinyl gloves. In the garage was an empty can of toluene. On top of it sat a stained coffee filter.

State Police Officer Mitch Carolan was qualified as an expert as having specialized training in narcotics investigation and clandestine methamphetamine labs. He testified in some detail how cold medication, coffee filters, toluene, Red Devil Lye, drain cleaners, salt, alcohol, hydrogen peroxide, muriatic acid, and tubing were used in the process of manufacturing methamphetamine according to the red-phosphorous method. He further testified that vinyl gloves were worn for protection against the chemicals or to prevent leaving fingerprints and that he had seen a

lot of gloves like those found in previous investigations. Carolan also said that it was common to find syringes at clandestine labs and explained that syringes were used to inject methamphetamine. Although two of the main ingredients for manufacturing methamphetamine were not found in the search, iodine and red phosphorous, Officer Carolan was aware that appellant had purchased iodine days before the search. Based on all of the evidence, it was his opinion that appellant was gathering materials to manufacture methamphetamine by the red-phosphorous method.

Heather Douglas gave testimony as to the items she had personally found in the searches. She also testified that appellant was on parole under her supervision for the offense of conspiracy to manufacture methamphetamine and that he also had a prior felony conviction for possession of methamphetamine with intent to deliver.[2]

Appellant's parents testified on his behalf. Pat King, his mother, said that she had rental properties and that she owned the house where appellant had lived. She was not certain, but she believed that appellant had lived in the house a few months, possibly seven, before the search took place. She said that the house had been vacant before appellant moved in and that the previous tenants had left a lot of things in the house, including drain cleaners. Ms. King testified that appellant had allergies for which he took cold medication, about a box a week. She said that appellant helped her with the rent houses and that he used drain cleaners to unstop drains. She also said that appellant used muriatic acid to clean bricks on a house that she had recently built. She did not know why appellant had an abundance of alcohol or why he had some in his car. She also did not know why there was a coffee filter in the garage, or why appellant had a used syringe in the trash can.

Jim Dale Cluck, appellant's father, lived in Oklahoma where he had a cattle ranch. He testified that he used liquid iodine to treat rock-foot disease and that appellant had purchased iodine for him in the past. He also said that his son used iodine in his chicken houses to medicate the chickens.

---

[2] In its first footnote, the majority says that the State inadvertently failed to introduce appellant's prior conviction for conspiracy to manufacture methamphetamine during the testimony of Heather Douglas. This statement is a gross mischaracterization of the record. Ms. Douglas plainly testified that appellant had prior convictions for conspiracy to manufacture methamphetamine and possession of methamphetamine with intent to deliver.

In rebuttal, the State offered the testimony of Jerry Pittman, a sergeant with the Crawford County Sheriff's Department. He was in charge of the narcotics division and had participated in the search of appellant's residence on New Year's Eve of 1998 that resulted in appellant's conviction for conspiracy to manufacture methamphetamine. Pittman testified that the items seized in the search included iodine crystals, a plate of three syringes, a razor blade with residue, baggies with dirty white powder inside, a baggie containing tubing and PVC pipe, three cans of Red Devil Lye, a bottle of Sudafed, rock salt, acetone, muriatic acid, a hand-rolled marijuana cigarette, an opened box of baggies, empty packages of syringes, wet coffee filters that were stained red, rolling papers, a bag containing red phosphorous, iodine, methamphetamine, rubber gloves, hand-held scales, three spoons with residue, and a notebook containing a recipe for making methamphetamine.

The State had the burden of proving that appellant possessed drug paraphernalia and that he did so with the intent of manufacturing methamphetamine. Ark. Code Ann. § 5-64-403(c)(5) (Supp. 2003). When the evidence is viewed in the light most favorable to the State, there was expert testimony that appellant had assembled the vast majority of the materials necessary for producing methamphetamine using the red-phosphorous method. There was also evidence that appellant had recently purchased iodine, one of the missing ingredients, such that only one ingredient was absent. Even so, we have held that it is not necessary for there to be evidence of all the materials required for producing methamphetamine in order to sustain a conviction for possession of drug paraphernalia with intent to manufacture that substance. *Cherry v. State,* 80 Ark. App. 222, 95 S.W.3d 5 (2003). In addition, there was evidence that appellant had previously been convicted of conspiracy to manufacture methamphetamine and possession of methamphetamine with intent to deliver, and there was evidence that appellant was presently in possession of materials that were similar to those found in connection with his prior conspiracy conviction. This body of evidence served to establish both that appellant knew that the items he possessed in this instance were drug paraphernalia with which methamphetamine is produced and that he had the intent to manufacture methamphetamine. Further, appellant was in possession of a syringe that could be used to inject methamphetamine once the substance was made. It is of no consequence that there was no methamphetamine or pungent odor typically associated with manufacturing methamphetamine because appellant was not charged with the offense of manufac-

turing methamphetamine. Furthermore, the jury obviously rejected appellant's defense that the materials were common household items which he put to legitimate use, as was its prerogative in determining the credibility of the witnesses and the weight to be given the testimony. On this record, I cannot conclude that there is no substantial evidence to support the verdict of guilt.

Our decision in *Gilmore v. State,* 79 Ark. App. 303, 87 S.W.3d 805 (2002), is readily distinguishable. There, the Gilmores were found guilty of possessing of drug paraphernalia with intent to manufacture methamphetamine after a search of their vehicle in the Wal-Mart parking lot revealed that they had purchased seven boxes of antihistamine tablets, four cans of starting fluid, a can of butane, air freshener, and two propane bottles. We found the evidence insufficient after considering the factors used to determine whether objects are drug paraphernalia as set out in Ark. Code Ann. § 5-64-101(v) (Repl. 1997). The only factor that applied was that of expert testimony; however, the officer's testimony was deemed deficient because he stated that the Gilmores' possession of the items gave rise to only a "suspicion" that methamphetamine was to be made with them.

The evidence in this case is different. Here, in addition to having a number of materials used to produce methamphetamine, appellant was in possession of a syringe that is used for injecting methamphetamine. Secondly, the expert testimony in this case was positive and unequivocal, and was not spoken in terms of mere suspicion. Third, there was evidence that appellant had previous methamphetamine-related convictions, which is also among the factors listed in Ark. Code Ann. § 5-64-101(v).

Turning to the evidentiary issues, appellant first argues that the trial court erred by allowing the State to introduce into evidence that he had been convicted of conspiracy to manufacture methamphetamine and possession of methamphetamine with intent to deliver, and that he was on parole. Appellant's second evidentiary argument is that the trial court erred by permitting the State to offer the rebuttal testimony of Officer Pittman about the items seized in the prior search. The majority discusses these two issues together, but they cannot be joined because they represent separate and distinct issues. Appellant contends in his first argument that his prior convictions and status as a parolee were not admissible under Rules 404(b) and 403. His second argument is that the testimony of Officer Pittman was not proper rebuttal testimony because it was not responsive to evidence presented by

the defense. Appellant makes no argument that Pittman's testimony was not admissible under Rules 404(b).[3] Yet, the majority addresses these two issues as if they involve the same point of law and holds that the rebuttal testimony was not admissible under 404(b), when appellant does not argue on appeal that the rebuttal testimony was not admissible under that rule. In these respects, the majority opinion is flawed.

With regard to the prior convictions and parole status, appellant moved *in limine* before trial to preclude Heather Douglas from testifying that appellant was on parole at the time of his arrest and that she was a parole officer. The court granted the motion in part and denied it in part, ruling that Ms. Douglas could state her occupation as a parole officer. Appellant also moved *in limine* to prohibit the State from introducing into evidence his prior convictions for conspiracy to manufacture methamphetamine and possession of methamphetamine with intent to deliver. The court made the preliminary ruling that the State could not introduce those convictions "unless the defendant first brings up the issue as far as ignorance and lack of knowledge, et cetera."

After appellant's cross-examination of Officer Dawson, the State asked the trial court to reconsider its rulings with regard to appellant's parole status and his prior convictions. The State argued that appellant had opened the door by eliciting testimony from Dawson on cross-examination that much of the alleged paraphernalia were common household items that had legitimate uses. The trial court agreed, stating that it was "the defendant's contention that he just accidentally had these things and they were being used for lawful purposes. I believe that the intent or that — the knowledge that he has becomes critical as far as the State is concerned." The court thus permitted Heather Douglas to testify that appellant was on parole under her supervision for the offense of conspiracy to manufacture methamphetamine and that he also had a previous conviction for possession of methamphetamine with intent to deliver. Although not mentioned by the majority, the trial court gave a cautionary instruction that this evidence was

---

[3] Although appellant chose to recite in his brief his entire objection to Officer Pittman's testimony that he made at trial, which included a 404(b) argument, appellant does not advance any argument on appeal that Pittman's testimony was not admissible under Rule 404(b). Consequently, appellant has abandoned the Rule 404(b) argument. *Hale v. State,* 343 Ark. 62, 31 S.W.3d 850, fn.7 (2000); *Dondanville v. State,* 85 Ark. App. 532, 157 S.W.3d 571 (2004).

not to be considered for the purpose of proving bad character and that it should be considered for no other purpose than to show proof of motive, intent, knowledge, identity or absence of mistake or accident.

Appellant assigns the rulings admitting the prior convictions and the fact that he was on parole as error. In my view, the prior convictions were admissible under Rules 404(b) and 403, and the evidence regarding appellant's parole status resulted in no prejudice.

In *Alford v. State*, 223 Ark. 330, 266 S.W.2d 804 (1954), the supreme court clarified the law as to when acts of prior misconduct are admissible in a criminal trial. The decision teaches that proof of other crimes is never admissible when its only relevancy is to show that the defendant is a person of bad character, addicted to crime. The court went on to say, however:

> If other conduct on the part of the accused is independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal — then evidence of that conduct may be admissible, with a proper cautionary instruction by the court. 'While the principle is usually spoken of as being an exception to the general rule, yet, as a matter of fact, it is not an exception; for it is not proof of other crimes as crimes, but merely evidence of other acts which are from their nature competent as showing knowledge, intent or design, although they may be crimes, which is admitted. In other words, the fact that evidence shows that the defendant was guilty of another crime does not prevent it from being admissible when otherwise it would be competent on the issue under trial.' *State v. DuLaney*, 87 Ark. 17, 112 S.W. 158.

*Id.* at 334, 266 S.W.2d at 806.

The *Alford* principles are now embodied in Rule 404(b), which provides:

> *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Consistent with the rule, the supreme court has held on a number of occasions that evidence of prior sales of contraband are

independently relevant on the issue of intent when the accused is charged with possession of contraband with intent to deliver. In *Lincoln v. State,* 285 Ark. 107, 685 S.W.2d 166 (1985), the court found no error where various witnesses were allowed to testify that they had bought drugs from the appellant in the past, as proof of his intent to deliver the cocaine in his possession. In *Holloway v. State,* 293 Ark. 438, 738 S.W.2d 796 (1987), the appellant was also convicted of possession of cocaine with intent to deliver. A witness testified that appellant had told her that, if she knew anyone else needing cocaine, she should refer that person to him. The court upheld the admission of this testimony under Rule 404(b), as proof relevant to the issue of intent to deliver. *See also Johnson v. State,* 333 Ark. 673, 972 S.W.2d 935 (1998) (no error in failing to redact references to prior drug sales in appellant's statement to police as proof of intent where appellant was charged with possession of contraband with intent to deliver); *Scroggins v. State,* 312 Ark. 106, 848 S.W.2d 400 (1993) (prior drug sales admissible to show intent when charged with delivery of a controlled substance).

In *Neal v. State,* 320 Ark. 489, 898 S.W.2d 440 (1995), the appellant was on trial for possession of marijuana with intent to deliver. He asserted the defense that he had no knowledge that marijuana was in his home. The State introduced the testimony of several witnesses who said that they had purchased marijuana from appellant in the past. The supreme court affirmed, stating that "[i]n view of Mr. Neal's claim, which was made in his counsel's opening statement before the jury, that he had no knowledge of the presence of the marijuana in his home, the evidence of prior sales was relevant to cast grievous doubt upon his testimony." The court further held that, although the prejudicial effect was strong, it could not say that the prejudice was unfair, given the defense that was asserted.

The decision in *Crawford v. State,* 308 Ark. 218, 822 S.W.2d 386 (1992), involved a similar situation. There, the appellant was accused of possessing cocaine with intent to deliver. Cocaine was discovered in a search of his house, and appellant defended the charge by presenting a witness who testified that the cocaine belonged to him, not the appellant. The State elicited testimony that appellant had sold cocaine to a confidential informant the day before the search. Citing *Holloway v. State, supra,* the court upheld the admission of the evidence as relevant to the issue of intent.

In *Owens v. State,* 325 Ark. 110, 926 S.W.2d 650 (1996), the appellants were convicted of manufacturing methamphetamine,

possession of methamphetamine with intent to deliver, and possession of drug paraphernalia. They argued on appeal that the trial court erred in admitting the testimony of a witness who said that she had manufactured methamphetamine with appellants two months before their arrests, and that she had purchased chemicals for them to use in manufacturing methamphetamine six months prior to the arrests. Referring to its previous interpretation of Rule 404(b) in *Sullivan v. State,* 289 Ark. 323, 711 S.W.2d 469 (1986), the court determined that the testimony was properly admitted because it was relevant to show that the offenses appellants were accused of committing had actually occurred. The court stated:

> Barbara Sparks' testimony falls within the "independent relevance" concept enunciated in *Sullivan* and *Lindsey.* The jury in this case had the task of deciding whether the appellants engaged in the manufacture of methamphetamine, possessed methamphetamine with intent to deliver, and possessed drug paraphernalia. Barbara Sparks' testimony was relevant to the issues of whether, in this case, the appellants were actually manufacturing methamphetamine, were actually using certain ordinary household items in the manufacturing process, and merely possessed the drug or possessed it with the intent to deliver, and whether the items found in the house could be used as drug paraphernalia. *See* Ark. Code Ann. § 5-64-101(v) (Repl. 1993). Her testimony was relevant to show that these offenses of which the appellants were accused occurred. Thus, Rule 404(b) was not violated.

*Owens* at 122, 926 S.W.2d at 656–57.

In reaching this conclusion, the court was also persuaded by its previous decisions holding that, when a defendant is charged with possession with intent to deliver, evidence of prior drug sales, if not too remote in time, are admissible to show intent. Even though the witness's testimony involved more than prior drug sales, the court found those cases to be analogous because the decisions recognized the value of such evidence in drug cases where intent or purpose is an issue. The court further held that, while the testimony was detrimental, its probative value exceeded the danger of unfair prejudice.

With this background in the law, I am convinced that the trial court did not abuse its discretion by admitting appellant's prior convictions. As noted earlier, the State was required to prove that appellant possessed drug paraphernalia and that he possessed

the paraphernalia with the intent to manufacture methamphetamine. As an element of the offense, appellant's intent was squarely at issue, thus evidence bearing on the issue of intent possesses independent relevance. That appellant previously conspired to manufacture methamphetamine and that he previously possessed methamphetamine with the intention of selling it have the tendency to prove that appellant possessed the materials in question with the intent of producing methamphetamine. The conspiracy conviction also has the tendency of proving that appellant had knowledge that the items he possessed were paraphernalia with which methamphetamine is manufactured. The probative value of this evidence was further enhanced by appellant's defense that the materials had legitimate uses common to most households. In sum, the testimony established that the offense of possession of drug paraphernalia with intent to manufacture methamphetamine actually occurred. While this evidence was undeniably prejudicial, its probative value was not outweighed by the danger of unfair prejudice.

As for appellant's parole status, the trial court committed no error in allowing appellant's prior convictions to be introduced into evidence. Consequently, testimony disclosing that appellant was on parole in connection with one of those convictions was not such a stunning revelation. At most, this testimony was cumulative to the evidence concerning appellant's previous convictions, and the supreme court has adopted the position that evidence that is cumulative is not considered prejudicial. *Threadgill v. State,* 347 Ark. 986, 69 S.W.3d 423 (2002); *see also Smith v. State,* 354 Ark. 226, 118 S.W.3d 542 (2003); *Camp v. State,* 66 Ark. App. 134, 991 S.W.2d 611 (1999). Therefore, the testimony that appellant was on parole provides no cause to reverse.

Concerning the rebuttal testimony, appellant contends that the testimony of Officer Pittman detailing the evidence seized in the 1988 search was not responsive to that which he presented in his defense. I disagree with that argument. The admissibility of rebuttal evidence lies within the sound discretion of the trial court, and we will not reverse absent a showing of abuse of that discretion. *Bell v. State,* 334 Ark. 285, 973 S.W.2d 806 (1998). Rebuttal evidence is that which is offered in reply to new matters, even if it overlaps with evidence presented in the State's case-in-chief, as long as the testimony is responsive to evidence presented by the defense. *Kincannon v. State,* 85 Ark. App. 297, 151 S.W.3d 8 (2004). The fact that the State could have presented the testi-

mony in its case-in-chief does not preclude its introduction on rebuttal if it serves to refute evidence raised by the defense. *Bell v. State, supra.*

In this case, appellant's parents gave testimony as to the innocent uses to which appellant put various items found in the search of his residence. Officer Pittman's testimony revealed that appellant had possessed similar items in the past for purposes that were not so legitimate. Clearly, the testimony was responsive to evidence raised by the defense, and the trial court did not abuse its discretion by allowing it. Appellant also contends that Pittman's testimony was unduly prejudicial because of the sheer numbers of items that were mentioned. Appellant, however, did not raise this argument at trial. Had appellant wished to limit the breadth of this testimony he could and should have raised an objection on that basis. It requires no citation of authority to state that we do not address issues that are raised for the first time on appeal.

I am at a loss to explain the majority's decision on this point. On one hand, the majority concludes that the evidence should have been presented in the State's case-in-chief, and on the other it holds that the evidence was not admissible at all under Rule 404(b). Aside from taking inconsistent positions, appellant makes neither argument on appeal. Furthermore, the majority's reliance on the decision in *Birchett v. State,* 289 Ark. 16, 708 S.W.2d 625 (1986), is sorely misplaced. The holding in that case is that the State is not allowed to elicit testimony from a defendant for the purpose of presenting a rebuttal witness as an end-around the discovery requirement of disclosing witnesses in advance of trial. That holding has absolutely no application here.

For the reasons discussed, I would affirm appellant's conviction. I am authorized to state that Judge Vaught joins in this opinion.